UNITED STATES of America

v.

**Charles G. FLOYD, Jr. (1).**

**Crim. No. 3:92–CR–0519–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 23, 1993.

See also 809 F.Supp. 24.

Robert L. Webster, James S. Hinkle and John W. Scott, Asst. U.S. Attys., Dallas, TX, for U.S.

Michael Fawer, Dallas, TX, for Floyd.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court is the Government's Motion to Enforce Order for Repatriation of Assets, filed January 20, 1993; the Government's Motion for a Restraining Order, filed January 26, 1993; and a Motion to Quash Subpoena and supporting brief, filed by United Bank of Lancaster on February 1, 1993.

On February 2, 1993, the Court held a hearing on the Government's application for a preliminary injunction under Section 853(e) of Title 21, United States Code. The Government seeks to "restrain Charles G. Floyd, Jr., his agents, servants, employees, attorneys and all other persons acting in concert with him, from disposing, moving, or encumbering in any way" the following assets: (1) about $259,331 in funds repatriated from Liechtenstein by Court order and now in the Registry of the Court; (2) about $142,388 in funds similarly repatriated and now in the Registry of the Court; (3) a cashier's check for $37,565 alleged to have been sent to Floyd's attorney on January 4, 1993; and (4) any other "cash, moneys, funds on deposit, cashier's checks" in Floyd's possession or control. Gvt's Mot. at 2. The Government asks the Court to maintain these assets in the Court's registry pending Floyd's criminal trial. Gvt's Mot. at 2–3.

For the reasons given below, the Court holds the following: ·(1) the Government has shown a substantial likelihood of obtaining post-conviction forfeiture of a cashier's check for $450,000, one of three assets alleged to be subject to forfeiture under Floyd's indictment; (2) the Government has shown a substantial likelihood of obtaining post-conviction forfeiture of Floyd's "substitute" property in the amount of $450,000; and (3) the Government may restrain that "substitute" property prior to trial.

Accordingly, the Government's motion for a preliminary injunction is GRANTED in part and DENIED in part. The Government will maintain in the Court's registry the approximately $401,000 in funds already deposited. The Government may restrain Floyd's other property, or may require other funds to be deposited into the Court's registry, up to a total amount, including the funds now in the registry, of $450,000.

## I. BACKGROUND

On December 17, 1992, an indictment was returned against Charles G. Floyd, Jr., formerly President and Chief Executive Officer of United Bank in Lancaster. Floyd is sole owner of United Banks's parent company, Lancaster Bancshares, Inc. The criminal charges against him include eight counts of offenses related to banking, including unlawful receipt of funds, unlawful participation, misapplication of funds, money laundering, and conspiracy to defraud the United States.[1]

1. Floyd is charged with violating Sections 215(a)(2), 371, 656, 1005, and 1957 of Title 18, United States Code.

The charges stem from a transaction on January 2, 1990, in which Floyd served as loan officer for four loans of $490,000 each, totaling $1,960,000. The Government alleges that the loans were illegally made to four entities related to or controlled by Co–Defendant Thomas Gaubert. Further, the Government alleges that Floyd illegally received and laundered $450,000 of a $640,000 deposit made by Gaubert into a checking account at Red Oak State Bank from proceeds of the loans. The $450,000 is alleged in the indictment to have been a reward to Floyd for causing United Bank to fund the four loans.

Count 11 of the indictment charges Floyd with liability for post-conviction forfeiture under Section 982(a)(1) of Title 18, United States Code, of the $450,000 cashier's check and of the remainder of the approximately $640,000 deposited to the account at Red Oak State Bank. Count 11 also states the Government's intent to hold Floyd liable for post-conviction forfeiture of any of his property to substitute for the named property should it be unavailable. Count 12 of the indictment charges Floyd with liability for forfeiture of the four loans, totaling $1,960,-000. It too states the Government's intent to obtain forfeiture of any of Floyd's assets as substitute for the named property should it then be unavailable.

On January 11, 1993, the Government applied for an *ex parte* protective order under Section 853(e), Title 21, United States Code. In its motion, the Government asked the Court for three actions: (1) to repatriate certain funds totalling about $401,000 that Floyd had previously wired to two accounts in a Liechtenstein bank; (2) to allow the seizure of a $37,000 cashier's check drawn in Floyd's name and held by his attorney; and (3) generally, to restrain Floyd or any of his associates or family from disposing of or diminishing the value of any of his property. The Court denied the Government's motion with respect to the final two requests but granted the order for repatriation of the Liechtenstein funds by Order of January 13,

1993. On February 1, 1993, Floyd deposited the two checks into the Registry of the Court. By the Court's Order of February 3, 1993, and by agreement of the parties, the checks have remained in the Registry pending the Court's decision on the Government's motion for preliminary injunction.

## II. PRETRIAL RESTRAINT OF SUBSTITUTE ASSETS

█ Before reaching the merits of the Government's motion for preliminary injunction, the Court must decide the threshold issue of whether the Government may apply under Section 853(e) of Title 21, United States Code, for pretrial restraint of "substitute" property. The property at issue before the Court is not, as the Government concedes, directly subject to forfeiture under Section 982(a) of Title 18. Rather, it is "substitute" property, which is subject to post-conviction forfeiture under Section 853(p) of Title 21 only under certain conditions. The parties dispute whether § 853(e) authorizes restraint of substitute assets prior to trial. A brief review of the relevant statutes is necessary before proceeding further.

Section 982(a) of Title 18, United States Code, authorizes forfeiture of certain property on conviction for the crimes with which Defendant Floyd is indicted in this case. Such property is variously defined, depending on the offense, but must, generally speaking, be involved in or flow from the offense to be subject to forfeiture.[2] Should that property be unavailable following conviction, section 853(p) of Title 21, United States Code, authorizes forfeiture of any other of a defendant's property in substitution for the property described in § 982(a), up to the amount of its value.[3] Property forfeitable after conviction under § 853(p) is referred to as "substitute" property.

Under certain circumstances, the property described in § 982(a) is subject not only to post-conviction forfeiture but also to restraint

---

**2.** For the text of section 982(a), see Section III(A) below.

**3.** Certain sections of § 853, including § 853(e) and (p) are incorporated into § 982 to govern

seizure and disposition of property subject to forfeiture under § 982. *See* 18 U.S.C. 982(b). For the text of subsection 853(p), see Section III(C)(1) below.

prior to the trial. Authorizing that action is section 853(e) of Title 21:

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—

(A) upon the filing of an indictment ... alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section....

21 U.S.C. § 853(e)(1)(A).

The question before the Court is whether substitute property too is subject to pretrial restraint under § 853(e) above. Defendant Floyd argues that the reference in § 853(e) above to the property "described in subsection (a)" [4] precludes pretrial restraint of substitute property, which is defined only in § 853(p). The Court disagrees. Congress's sole purpose of allowing pretrial protective orders under § 853(e) is "to preserve the status quo, *i.e.,* to assure the availability of the property pending disposition of the case." S.Rep. No. 225, 98th Cong., 2nd Sess. 204 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3387. To accomplish that purpose, § 853 must be read as a whole. The Court holds that § 853(e) allows the Government to apply for pretrial restraint of substitute assets that would be subject to post-conviction forfeiture under § 853(p).

In so holding, the Court relies on the reasoning of the Fourth Circuit decision of *In re Billman,* 915 F.2d 916 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991). In *Billman,* the court allowed pretrial restraint of substitute assets under the RICO forfeiture statute, which is identical in relevant subsections to the forfeiture provisions of § 853. The *Billman* court observed that forfeiture under the RICO statute, as under § 853 in this case, is an *in personam* proceeding; it is intended to

constitute "partial punishment for the offense." *Id.* at 920; *see* S.Rep. No. 225, 98th Cong., 2nd Sess. 202, 204, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3385, 3387. A forfeiture provision should be " 'liberally construed to effectuate its remedial purposes.' " *Id.* at 921 (quoting *Russello v. United States,* 464 U.S. 16, 26–27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983)). Accordingly, the *Billman* court held:

[T]he pretrial restraining provisions of [the forfeiture statute] do not permit a defendant to thwart the operation of forfeiture laws by absconding with RICO proceeds and then transferring his substitute assets to a third person....

*Id.* at 921.

This Court is of the view that the same should be said about section 853(e) of Title 21, the identical statute governing forfeiture for offenses under section 982 of Title 18. Denying the Government the right to restrain substitute property in advance of trial allows a defendant to circumvent Congress's express intent by disposing of forfeitable assets between the time of indictment and the time of trial. That result is not justifiable. *See United States v. Swank Corp.,* 797 F.Supp. 497 (E.D.Va.1992); *see also United States v. Skiles,* 715 F.Supp. 1567 (N.D.Ga. 1989).

The Court finds support for its decision from the Supreme Court in *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). Although that case did not deal with the availability of substitute assets for pretrial restraint, its language confirms the strong policy of preserving assets ultimately subject to forfeiture: "Permitting a defendant to use assets for his private purposes that, under [§ 853], will become the property of the United States if a conviction occurs cannot be sanctioned." *Id.* at 613, 109 S.Ct. at 2665. This Court similarly refuses to allow the potential depletion of property subject to forfeiture. Having decided that the Government may apply for pretrial re-

---

4. Section 853(a) defines property subject to forfeiture under § 853 as "constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" an offense described in § 853; or property "used, or intended

to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." This section corresponds to § 982(a), which defines property subject to forfeiture for offenses under § 982.

straint of Floyd's substitute assets, the Court must now decide whether the Government's application should be granted.

## III. HEARING

■ The Fifth Circuit in *United States v. Thier*, 801 F.2d 1463 (5th Cir.1986), set out the requirements for a hearing on a motion for pretrial restraint of property subject to post-conviction forfeiture. In that case, the court held that Federal Rule of civil Procedure 65 must be followed in a motion for pretrial restraint under § 853(e). At a hearing on the motion, the Government has the burden of establishing the traditional elements for issuance of a preliminary injunction: (1) that the Government has a substantial likelihood of ultimately prevailing on the merits; (2) that irreparable injury would result should the injunction not issue; (3) that the threatened injury to the Government outweighs any harm to the defendant from the injunction; and (4) that the entry of an injunction would be consistent with the public interest. *Thier*, 801 F.2d at 1470. On a finding that the Government has met its burden, the Court's discretion in granting an injunction under § 853(e) "must be cabined by the purposes for which Congress created [the statute]: 'to preserve the availability of property ... for forfeiture.'" *Monsanto*, 491 U.S. at 613, 109 S.Ct. at 2665.

In this case, the Court has considered the evidence in combination with the strong public policy reflected in the federal criminal forfeiture statutes. The final three elements of the test for issuance of an injunction clearly weigh in the Government's favor. The first element, however, is more problematic and requires further discussion.

Under the first element, the Government must prove a substantial likelihood of success in obtaining post-conviction forfeiture of Floyd's substitute property.[5] In meeting that burden, the grand jury's finding of prob-

able cause is a "strong showing[ ]" but "not irrebuttable." *Thier*, 801 F.2d at 1470. The Court must consider all matters developed at the hearing. *See id.*

Three sums are at issue here: (1) the $1.96 million comprising the four loans at the heart of the criminal case; (2) the $640,000 of the loan proceeds that Gaubert allegedly deposited to an account at Red Oak State bank; and (3) the $450,000 Floyd allegedly received out of the $640,000 as a kickback from the loan proceeds. The Government must prove a substantial likelihood of the following with regard to each sum: first, that the property named in the indictment would be subject to post-conviction forfeiture under § 982(a) of Title 18, United States Code; and second, that Floyd's substitute assets would be subject to post-conviction forfeiture under § 853(p) of Title 21, United States Code. Of the three amounts, the Government has met its burden only with respect to the sum of $450,000.

### A. The $1.96 Million

■ Under Count 12 of the indictment, the Government alleges the entire $1.96 million at issue in this case to be subject to forfeiture by Floyd under section 982(a)(2) of Title 18, United States Code. The Government argues that "[b]ecause the loan funds were connected to a crime they are tainted and subject to forfeiture." Gvt's Brief at 5. The Court disagrees.

Section 982(a) requires forfeiture of property on conviction of certain crimes. Its subsections (1) and (2) contain different definitions and conditions of forfeiture, depending on the crime for which a defendant is convicted:

(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 5313(a), 5316, or 5324 of title 31, or of section 1956 or 1957 of this title, shall order that the person forfeit to the United

---

5. At the hearing, much of the evidence was directed towards the parties' dispute of two issues: whether Floyd repaid the entire amount of the $450,000 cashier's check to United Bank; and whether the bank will have suffered a loss because of the four allegedly illegal loans. The Court finds those questions to be relevant, if at all, only to the underlying criminal charges against Floyd and not to the narrow issue of forfeiture the Court addresses today. *See Thier*, 801 F.2d at 1470 ("The court should consider the merits of the government's case only as to the possessory property rights which have been created or altered by the grand jury's finding of the existence of probable cause that the assets are forfeitable.").

States any property, real or personal, *involved in such offense,* or any property traceable to such property....

(2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate, section 215, 656, 657, 1005, 1006, 1007, 1014, 1341, 1343, or 1344 of this title, affecting a financial institution, shall order that the person forfeit to the United States any property constituting, or derived from, proceeds *the person obtained* directly or indirectly, as the result of such violation.

18 U.S.C. § 982(a)(1) & (2) (emphasis added).

█ In this case, the indicted offenses under which Floyd would be subject to forfeiture of $1.96 million are listed only in § 982(a)(2).[6] The language of that subsection requires that a defendant obtain property from the crime before the property is subject to forfeiture. In contrast, the preceding § 982(a)(1) requires forfeiture of property that is merely "involved in" the offenses listed. The Court finds the distinction to be significant. For property to be subject to forfeiture under § 982(a)(2), the property must be shown to be more than merely connected to or involved with the listed crimes. Rather, a defendant must have at some time obtained or possessed the property, either as a direct or indirect result of the crime.

No evidence presented to the Court supports the allegation that Floyd ever "obtained" or had possession of the entire $1.96 million loan proceeds. Rather, the indictment and other evidence allege merely that he caused United Bank to make the four $490,000 loans. *See* Testimony of James Ellis. The Government has not shown a substantial likelihood that Floyd will be liable on conviction for forfeiture of $1.96 million. Accordingly, the Government may not restrain that amount prior to trial.

**B. The $640,000**

█ A deposit in the amount of $640,000 is the subject of Count 9 of the indictment. Count 9 recites a charge of money-laundering against Co–Defendant Thomas Gaubert and not against Floyd. It alleges that Gaubert deposited that amount, taken from proceeds of the four loans, in an account at Red Oak State Bank out of which he allegedly paid Floyd a $450,000 kickback. Count 11 alleges that the $640,000 deposit is subject to forfeiture.

The Government argues that even though Floyd is not charged directly with an offense concerning the $640,000 deposit, he is liable for forfeiture of that amount on a theory of conspiracy. Count 1 of the indictment charges both defendants with conspiracy to commit offenses against the United States. It does not necessarily follow, however, that assets forfeitable only by Gaubert would also be forfeitable by Floyd on conviction for conspiring in the offense; the assets, after all, can be forfeited only once.[7] The Court looks for guidance on this question to the forfeiture provisions, which, significantly, address the possibility of a conspiracy conviction as the basis for forfeiture.

In looking at § 982(a)(1) and (2), the Court again finds the differences between the two forfeiture provisions to be controlling. In this case, the $640,000 is the subject only of Count 9, for which forfeiture would arise under § 982(a)(1).[8] That section makes no mention of conspiracy. In § 982(a)(2), on the other hand, Congress expressly requires forfeiture of certain property on conviction for conspiracy to commit the named offenses. The absence of the conspiracy provision from § 982(a)(1), in such close proximity to the presence of a conspiracy provision in § 982(a)(2), must be given meaning by the Court. The Court concludes that conviction for conspiracy to commit an offense listed in

---

6. Floyd is alleged to be liable for forfeiture of $1.96 million in loan proceeds for violations of Sections 371, 215, 1005, and 656 of Title 18, United States Code.

7. In support of its argument, the Government cites only *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). That case holds that a co-conspirator is liable for substantive acts of other co-conspirators during the conspiracy; it does not address post-conviction forfeiture or any similar issue.

8. Count 9 charges Co–Defendant Gaubert with violating Section 1957 of Title 18, United States Code.

§ 982(a)(1) does not necessarily result in the co-conspirator's forfeiture of property involved in the offense itself. The Government presents no other evidence connecting Floyd to the $640,000 deposit. Accordingly, the Government has not met its burden of showing a substantial likelihood that Floyd would be liable for post-conviction forfeiture of the $640,000 deposit.

### C. The $450,000 Cashier's Check

■ Under Counts 10 and 11 of the indictment, Floyd is alleged to be liable for forfeiture of a $450,000 cashier's check. The Government alleges that Floyd illegally received and laundered the $450,000 from the $640,000 deposit made by Co–Defendant Gaubert from proceeds of the four loans. Allegedly, the $450,000 served as a reward to Floyd for causing United Bank to fund the loans. Under § 982(a)(1), which applies to the substantive offenses associated with the $450,000 cashier's check,[9] the check would be subject to forfeiture if merely "involved in" the alleged crime. Under the evidence presented at the hearing, the cashier's check is clearly the subject of the crime itself. *See* Pretrial Order ["PTO"] at 3–4 (stipulations of fact); Testimony of James Ellis. The Government has shown a substantial likelihood that the $450,000 cashier's check itself would be subject to forfeiture on conviction.

The next question is whether the Government has shown a substantial likelihood that Floyd's "substitute" assets also would be subject to post-conviction forfeiture in that amount. Defendant argues that substitute assets should not be available to the Government for two reasons: first, that the Government has not met the statutory requirement for forfeiture of substitute assets under § 853(p) of Title 21, United States Code; and second, that Floyd was merely an intermediary under Section 982(b)(2) of Title 18, United States Code.

### 1. Statutory requirement under § 853(p).

■ Section 853(p) of Title 21 addresses the post-conviction forfeitability of substitute property:

(p) If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant—

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

21 U.S.C. § 853(p).

To meet the requirement of this subsection, the Government must show that one of the five conditions exists, and that the condition was caused by Floyd. In this case, the Government presents sufficient evidence that the second condition has been fulfilled. The parties have stipulated for purposes of this hearing that Floyd no longer has the funds from the $450,000 cashier's check. PTO at 3–4 (stipulations of fact). Testimony at the hearing established that the entire amount was transferred either to United Bank or, as the Government alleges, in part to unrelated third parties. *See* Testimony of James Ellis; Testimony of Patsy Hale. The only question for the Court is whether United Bank is a "third party" for purposes of applying § 853(p). Floyd argues that the bank is not a third party because it was under his total ownership and control at the time of the transfers. The Court disagrees.

■ Although the parties dispute how much of the original $450,000 cashier's check Floyd transferred to United Bank, they agree on the purpose for the transfers. Floyd used the funds to make payments on troubled loans that United Bank had previously made to two entities unrelated to Floyd. Those third parties received the benefit of the payments, at least in the short

9. Under Count 10, Floyd is charged with violating Section 1957 of Title 18, United States Code.

term, and thus qualify as third-party transferees under the statute. In any event, United Bank is a heavily regulated institution owned not by Floyd as an individual but by Lancaster Bancshares, a corporation owned and controlled by Floyd. As such, it is an entity far enough removed from Floyd himself to be considered a third-party transferee for purposes of § 853(p).[10]

■ Floyd next contends that even if United Bank is a third party, the Government must seek forfeitable property directly from the bank before it obtains substitute assets from Floyd. The Court again disagrees. Section 853(c) of Title 21, United States Code, reads as follows:

> All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes ... that he is a bona fide purchaser for value....

21 U.S.C. § 853(c).

This subsection is permissive; it allows the Government to pursue forfeitable property held by a third party. Nowhere does § 853 require the Government to pursue forfeitable property from third parties before it seeks substitute assets. Reading that interpretation into the statute would diminish the effectiveness of § 853(p)(2), which authorizes the Government to seek substitute property under exactly the same circumstances—that is, when the forfeitable property has been transferred to third parties. *Cf. United States v. De Ortiz,* 910 F.2d 376 (7th Cir.1990) (holding, under similar reasoning, that the Government is not forced to seek substitute assets under § 853(p) prior to seeking property under § 853(c)).[11] The statute, when read as a whole, merely offers the Government alter-

native actions to secure property for forfeiture. Particularly in this case, because of a strong policy of protecting the assets of a potentially troubled banking institution, the Government's election to pursue Floyd's substitute property is permissible.

*2. Intermediary.*

■ Floyd's final argument that his substitute property is not subject to post-conviction forfeiture is that he was merely an intermediary in the $450,000 transaction. Section 982(b)(2) of Title 18, United States Code, provides:

> The substitution of assets provisions of [21 U.S.C. 853(p) ] shall not be used to order a defendant to forfeit assets in place of the actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense....

18 U.S.C. § 982(b)(2). Legislative history of the statute suggests that Congress intended this subsection to apply only to "the low level or occasional participant in a money laundering offense." Cong.Rec. S6606 (daily ed. May 18, 1990) (statement of Sen. Dole). The Government argues that the subsection applies only to the "smurf" or "two bit mule" in a traditional drug money laundering scheme. Gvt's Brief at 9.

Whatever Floyd's capacity in the overall loan transactions proves to have been, it is clear that he did not merely "handle" the $450,000 cashier's check. The evidence presented at the hearing establishes that on January 26, 1990, Floyd exchanged a check for $450,000 drawn on Red Oak State bank for a cashier's check in the same amount payable to Lancaster United Building Company, a company owned by Floyd. Floyd then engaged in a series of exchanges of the original cashier's check into other cashier's checks of smaller denomination from May 9, 1990, to March 29, 1991. PTO at 3–4 (stipu-

---

**10.** No evidence has been presented to support a theory of alter ego or of any other identity of interests between Floyd and the bank, other than indirect ownership.

**11.** Floyd wrongly relies on dictum in *Ortiz* suggesting, without citation or statutory support, that substitute property is available for forfeiture only when transfer has led to a loss or diminution in value of the original forfeitable assets.

lations of fact); Testimony of James Ellis. Under the parties' stipulations, Floyd retained control of the check or its ever-diminishing proceeds for a period of time exceeding one year. He does not meet the statutory definition of an intermediary with respect to those funds.

Accordingly, the Court finds a substantial likelihood that substitute assets in the amount of $450,000 would be subject to forfeiture on Floyd's conviction for money laundering. The Government is entitled to pretrial restraint of any of Floyd's property in that amount. *See* 21 U.S.C. § 853(e) & (p).

## IV. CONCLUSION

For the reasons given above, the Government's motion for a restraining order is GRANTED in part and DENIED in part. The approximately $401,000 of Floyd's funds repatriated from Liechtenstein shall remain in the Registry of the Court pending trial. The Government may fully restrain the transfer or disposal of any other of Defendant Floyd's property, or may require his funds to be deposited into the Registry of the Court, up to a maximum amount of $450,000, including the repatriated funds. The Government is DIRECTED to submit for the Court's approval a proposed injunction consistent with this opinion.

The Government's Motion to Enforce the Court's Order for repatriation of funds has been WITHDRAWN because of Floyd's compliance. The Motion to Quash Subpoena filed by United Bank prior to the hearing is GRANTED in part and DENIED in part by agreement of the parties.

SO ORDERED.