IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1181

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee
                                        Cross-Appellant,

                        versus

CHARLES G. FLOYD, JR.,

                                        Defendant-Appellant
                                        Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

( May 20, 1993 )

Before KING, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

    We vacate a pretrial restraining order freezing certain of defendant Floyd's assets that were untainted by the alleged criminal offenses, persuaded that the forfeiture statute does not authorize their restraint before conviction. We do not reach the government's cross-appeal contending that insufficient sums were restrained. We find our jurisdiction under 28 U.S.C. § 1292(a)(1).

I.

    Charles G. Floyd, Jr. is the former President and CEO of United Bank. His codefendant Thomas Merrill Gaubert was a real estate developer who borrowed money from United Bank. The indictment alleges that as part of a conspiracy between Floyd and

Gaubert the bank loaned $1.96 million to Gaubert for a payoff of $450,000 to Floyd. These loans, and there were four, were allegedly in excess of the bank's lending limits. The indictment also charges that Floyd and Gaubert disguised the loans by making them to four entities controlled by Gaubert, by failing to make the required disclosures to the bank, and by making false and misleading statements about them.[1]

The government first sought an <u>ex parte</u> order, pursuant to 18 U.S.C. § 982(b)(1)(A), seeking to restrain certain named assets and asking for a general restraint of Floyd's right to dispose of other assets. The district court partially granted this application, ordering Floyd to repatriate sums of $259,331 and $142,388

---

[1]Floyd was charged with numerous offenses in a twelve count indictment. Count 1 charges Floyd and Gaubert with conspiracy to defraud the OCC and to commit various offenses against the United States in violation of 18 U.S.C. § 371. Count 2 charges Gaubert with corruptly giving $450,000 to Floyd in connection with Floyd securing from United Bank four loans of $490,000 (totalling $1.96 million) in violation of 18 U.S.C. § 215. Count 3 charges Floyd with corruptly accepting the $450,000 payoff in violation of 18 U.S.C. § 215. Count 4 charges Floyd with unlawfully receiving $450,000 of the bank's money through the alleged payoff in violation of 18 U.S.C. § 1005. Counts 5-8 charge Floyd with four counts of misapplying bank funds, each pertaining to the $490,000 loans, in violation of 18 U.S.C. § 656. Count 9 charges Floyd with money laundering by depositing in another bank a $640,000 portion of the illegal loans in violation of 18 U.S.C. § 1957. Count 10 charges Floyd with money laundering by the use of the $450,000 payoff to obtain a cashier's check from another bank in violation of 18 U.S.C. § 1957. Count 11 seeks forfeiture under 18 U.S.C § 982(a)(1) from Floyd and Gaubert of property "involved in" the offenses, specifically the $450,000 cashier's check and the remainder of the $640,000 deposited in another bank, including substitute assets to the extent the criminally derived property is unavailable. Finally Count 12 seeks forfeiture under § 982(a)(2) of property "obtained directly or indirectly" by Floyd and Gaubert up to $1.96 million including substitute assets.

2

previously transferred to a bank in Liechtenstein. The $259,331 were proceeds from the sale of Floyd's homestead, and the government concedes that none of the assets it has attempted to restrain were derived from or connected to Floyd's alleged criminal activity. As a result, Floyd paid these sums, totalling $401,719, into the Registry of the Court.

Thereafter, the government sought a protective order under 21 U.S.C. § 853(e)(1)(A) to restrain Floyd's assets up to $1.96 million, urging that this amount was subject to forfeiture in the event of conviction under 18 U.S.C. § 982(a)(1) or (2) and further that because Floyd does not possess this tainted money the restraining order could also apply to substitute assets under 21 U.S.C. § 853(p). After first deciding that § 853 allows the pretrial restraint of substitute assets, the district court granted the government's motion but only to the extent of $450,000 in substitute assets, ruling that the full $1.96 million could not be restrained because it was not persuaded of a substantial likelihood that this amount would be forfeitable upon conviction. The effect of this decision was to require Floyd to pay an additional $48,281 into the Registry of the Court. The district court then denied Floyd's request to use the funds for living expenses and attorneys' fees. Floyd appeals the orders restraining $450,000 in substitute assets and denying use of the funds for expenses. The government appeals the court's refusal to restrain the full $1.96 million.

3

The first question is our jurisdiction over these appeals. Floyd relies on the collateral order exception to 28 U.S.C. § 1291, see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949), and § 1292(a)(1), which allows the interlocutory appeal of injunctions. The government contends that the order restraining $450,000 is final under § 1291 only to the extent it denied restraint of the full $1.96 million, allowing it to appeal but not Floyd. The government also seeks a writ of mandamus. We find jurisdiction over both appeals under § 1292(a)(1).[2]

In United States v. Thier, 801 F.2d 1463 (5th Cir. 1986), we reached the merits of the defendant's Fifth and Sixth Amendment challenge to a restraining order under § 853(e)(1)(A) without discussing jurisdiction. In United States v. Jenkins, 974 F.2d 32 (5th Cir. 1992), we accepted jurisdiction over a district court's denial of a motion to dissolve a pretrial restraining order issued under 18 U.S.C. § 1963(d) in a RICO conspiracy prosecution. We relied on Thier for the proposition that "[u]nder the law of this circuit, the district court's denial of Jenkins' motion is an

_____

[2]**§ 1292.  Interlocutory decisions**

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

   (1) Interlocutory orders of the district courts of the United States . . .  granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions
   . . .

interlocutory order refusing to modify or dissolve an injunction, and, as such, is immediately appealable under 28 U.S.C. § 1292(a)(1)." Id. at 34. We are not alone in holding that pretrial asset restraining orders are appealable as "injunctions" under § 1292(a)(1). United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 900-01 (2d Cir. 1992); United States v. Roth, 912 F.2d 1131, 1132-33 (9th Cir. 1990); see also United States v. Kramer, 912 F.2d 1257, 1259 (11th Cir. 1990) (stating that restraining orders under the RICO statute "have all the indicia of a traditional injunction for purposes of appellate review"); cf. United States v. Unit No. 7 and Unit No. 8, 853 F.2d 1445, 1448 (8th Cir. 1988) (finding jurisdiction over civil forfeiture under § 1292(a)(1) and jurisdiction over criminal forfeiture under the collateral order doctrine).

### B.

Our jurisdiction under § 1292(a)(1) to review the district court's restraining order does not encompass Floyd's contention that Count 10 fails to state an offense. See Jenkins, 974 F.2d at 34 ("[a]s a general rule, courts of appeals should conduct only a limited review in interlocutory appeals, and should address only the propriety of the orders that gave rise to the appeal"). Moreover, we have no interlocutory appellate jurisdiction over an attack on the sufficiency of the indictment. Abney v. United States, 431 U.S. 651, 663-64 (1977); United States v. Miller, 952 F.2d 866, 874 (5th Cir. 1992). Floyd, nevertheless, urges us to consider this claim because, the argument goes, the district

5

court's asset-restraining order necessarily depends on the sufficiency of Count 10, and if Count 10 is insufficient we must reverse the restraining order. We are not enticed by this proffered easier path to decision. The sufficiency of the indictment can be examined adequately in any appeal from a final judgment.

                                III.

Both parties challenge the district court's restraining order. Floyd argues that the government lacks the statutory authority to restrain untainted assets before conviction and in any event the government failed to prove the forfeitability of $450,000, and finally that the restraint of assets in this case violates the Fifth and Sixth Amendments. The government argues that the district court misapplied the statute to preclude restraint of the full $1.96 million. We do not reach the government's argument because we agree with Floyd that § 853 does not allow the restraint of substitute assets before conviction.

Section 853(e)(1)(A) is the source of any authority for the pretrial restraint of assets:

**Protective Orders**

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of <u>property described in subsection(a)</u> of this section for forfeiture under this section--

    (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the

                                6

event of conviction, be subject to forfeiture under this section . . .

(emphasis added).[3]   The parties agree that § 853(a) does not include substitute assets.[4]   Section 853(p) allows the forfeiture of substitute property if the property described in subsection (a) is unavailable for one of five listed reasons.[5]   The question is

---

[3]18 U.S.C. § 982 is the general criminal forfeiture statute. Section 982 incorporates certain subsections of 21 U.S.C. § 853. 18 U.S.C. §§ 982(b)(1)(A) and (B).

[4]**(a) Property subject to criminal forfeiture**

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 if this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.  In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

[5]**(p) Forfeiture of substitute property**

If any of the property described in subsection (a) of this section, as a result of any act or omission of the

7

whether the government may restrain substitute assets before conviction under § 853(e) notwithstanding that provision's explicit reference to the property described in § 853(a). We hold that it cannot.

The government, as did the district court, relies on the reasoning of In re Billman, 915 F.2d 916, 920-21 (4th Cir. 1990). In Billman, the Fourth Circuit interpreted the RICO forfeiture provisions, identical in all relevant respects to the provisions of § 853 involved here, to allow the pretrial forfeiture of substitute assets.[6] The court in Billman read § 853(e)(1)(A) and § 853(p) together "to preserve pending trial the availability for forfeiture of property that can be forfeited after trial." Id. at 921. The Fourth Circuit also found support from the Supreme Court in Russello v. United States, 464 U.S. 16 (1983), and United States v.

---

defendant--

> (1) cannot be located upon the exercise of due diligence;
>
> (2) has been transferred or sold to, or deposited with, a third party;
>
> (3) has been placed beyond the jurisdiction of the court;
>
> (4) has been substantially diminished in value; or
>
> (5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

[6]The analogous provisions of RICO are 18 U.S.C. §§ 1963(a), (d)(1)(A), and (m).

Monsanto, 491 U.S. 600 (1989). In Russello, the Court recognized that the RICO forfeiture statute directs that its provisions "shall be liberally construed to effectuate its remedial purpose." 464 U.S. at 26-27. According to the Fourth Circuit, the Supreme Court in Monsanto reached its conclusion that forfeiture under § 853 does not include an exception for the payment of attorneys' fees by reading the provisions of the statute together instead of in isolation. Billman, 915 F.2d at 921.

Whatever the ultimate soundness of Billman, we are not persuaded that it can fairly support the contended-for restraint of property. We find that the statute controlling the restraint before us plainly states what property may be restrained before trial. Congress made specific reference to the property described in § 853(a), and that description does not include substitute assets. Congress treated substitute assets in a different section, § 853(p). To allow the government to freeze Floyd's untainted assets would require us to interpret the phrase "property described in subsection(a)" to mean property described in subsection(a) and (p). Like the RICO statute at issue in Russello, Congress also included a directive in § 853 that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(o). However, this command for a liberal construction does not authorize us to amend by interpretation. Monsanto gives no such license. Rather it counsels against such "glossing." Interpreting the same statute at issue here, the Monsanto Court refused to find an exception for

9

attorneys' fees where Congress had not provided one and concluded by saying, "[i]f . . . we are mistaken as to Congress' intent, that body can amend this statute to otherwise provide.  But the statute as presently written, cannot be read any other way."[7]  109 S.Ct. at 2665.  We also cannot read § 853(e)(1)(A) any other way.

The government also argues that its interpretation harmonizes § 853(e) with § 853(f).[8]  Subsection (f) requires a court to issue a warrant of seizure upon the government's request if the court determines there is probable cause to believe the property would be forfeitable upon conviction and an order under subsection (e) would be insufficient to protect the availability of the property.  The government argues that if it cannot restrain substitute assets, it can simply obtain a warrant under subsection (f) to seize these assets.  The argument continues that Congress could not have intended that the government must seize substitute assets before trial.  This argument ignores the reality that a warrant is available to seize property covered by subsection (e) when its

---

[7]Moreover, the Court's reading of § 853(e)(1)(A) appears to be consistent with ours.  In Monsanto, the Court stated "§ 853(e)(1)(A) is plainly aimed at implementing the commands of § 853(a)."  109 S.Ct. at 2665.

[8]**(f) Warrant of seizure**

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant.  If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

10

procedures are inadequate.  It is not available for any asset of any type.  Subsection (e) does not apply to substitute assets.  The government's contention that it has the power to seize property that is not evidence of a crime nor the fruits of a crime hints of writs of assistance.  At the least it poses Fourth Amendment concerns sufficient to avert any temptation we might have to engage in interpretative handsprings to effectuate a legislative purpose the Congress did not express.

REVERSED.