62 F.3d 246
 UNITED STATES of America, Appellee,
v.
Clark Beach FIELD, Appellant.
UNITED STATES of America, Appellee,
v.
Richard FIELD, also known as Mike Field, Appellant.
UNITED STATES of America, Appellant,
v.
Clark Beach FIELD, Appellee.
UNITED STATES of America,
v.
Richard FIELD, also known as Mike Field, Appellee.
 Nos. 94-3544, 94-3546 and 94-3811.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1995.
Decided Aug. 7, 1995.
 
 Virginia G. Villa, Asst. Fed. Public Defender, Minneapolis, MN, argued, for appellant, Clark Beach Field.
 Paul C. Engh, Minneapolis, MN, argued, for appellant, Richard Field.
 Lizabeth A. McKibben, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Richard Field and Clark Beach Field take this interlocutory appeal from the district court's[1] denial of their motion to dismiss the indictment against them on the ground of double jeopardy. The government also appeals from the district court's order vacating an ex parte restraining order the government had obtained over the Fields' property. The restraining order prohibited the Fields from alienating their property during the pendency of the criminal case, up to an amount sufficient to substitute for the assets the Fields allegedly obtained by fraud. The district court vacated the temporary restraining order, ruling that it did not have the power to restrain assets before trial, except assets that were the fruits or instrumentalities of the alleged crime. Because the Fields do not assert a colorable double jeopardy claim, we lack jurisdiction over their appeal and must dismiss it. However, we affirm the order vacating the restraining order.
 
 
 2
 Richard and Clark Beach Field owned a whey-drying business called Clarkfield Drying, Inc., which obtained a $282,000 loan from the H.U.D. Small Cities Grant Program. Clarkfield Drying later filed for Chapter 7 bankruptcy. H.U.D. was an unsecured creditor in that bankruptcy. The bankruptcy trustee filed an adversary action against Clark and Richard Field and their company, Minnewaska Capital Development, Inc., seeking, among other things, a determination that the estate was entitled to insurance proceeds that resulted when a tornado destroyed the whey-drying plant. The insurance proceeds were paid on policies owned by Clarkfield Drying for property the Fields owned but leased to Clarkfield Drying. The bankruptcy trustee also sought to recover transfers and preferences from Clarkfield Drying to the Fields.
 
 
 3
 The Fields and the trustee settled the adversary proceeding, with the estate receiving some of the insurance proceeds and the Fields receiving title to the real estate and equipment Clarkfield Drying had leased and the right to pursue further insurance proceeds. The trustee agreed to make no further claims of preferences, fraudulent conveyances, or post-petition transfers against the Fields.
 
 
 4
 A grand jury indicted the Fields for (among other things) conspiracy to defraud and mail fraud, for acts they committed in obtaining the H.U.D. loan (specifically, falsely representing that they already had $282,000, which was a requirement for getting the government loan). The Fields moved to dismiss on the ground of double jeopardy and collateral estoppel, arguing that the settlement in the bankruptcy case constituted a criminal punishment for the same acts that form the basis for the indictment.
 
 
 5
 The district court denied the motion to dismiss. The court specifically determined, in accordance with United States v. Grabinski, 674 F.2d 677, 678 (8th Cir.) (per curiam), cert. denied 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982), that the Fields did not present a colorable double jeopardy claim.
 
 
 6
 The day after the grand jury returned the indictment against the Fields, the government obtained an ex parte order restraining the Fields from "dissipating assets subject to forfeiture pursuant to 18 U.S.C. Sec. 982." The restraining order covered not only the $282,000 allegedly obtained by fraud, but also the Fields' other property up to the value of $282,000, to serve as "substitute assets" in the event the government should not recover the actual proceeds of the fraud. The Fields moved to vacate the ex parte order because the court had no power under 18 U.S.C. Sec. 982 (Supp. V 1993) to restrain before conviction "substitute" assets, that is, assets not associated with the crime. A magistrate judge denied the Fields' motion, but the district judge vacated the restraining order to the extent it covered substitute assets. United States v. Field, 867 F.Supp. 869 (D.Minn.1994).
 
 I.
 
 7
 Under Grabinski, we have jurisdiction over an interlocutory appeal alleging a double jeopardy violation only if the double jeopardy claim is "colorable." Id. at 679-80. A double jeopardy claim is not colorable if no jeopardy has attached, and jeopardy does not attach without a risk of determination of guilt in a criminal proceeding. See United States v. Bailey, 34 F.3d 683, 687 (8th Cir.1994).
 
 
 8
 The bankruptcy adversary proceeding is not a criminal proceeding. The estate's claim was not transformed into a criminal proceeding for double jeopardy purposes under United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Under Halper, a civil case can be deemed criminal if the government recovers a judgment "not rationally related to the goal of making the [g]overnment whole" for losses suffered due to the defendant's acts. Id. at 451, 109 S.Ct. at 1903. This case is so remote in so many ways from Halper that it is hard to find a starting point for discussion. It is enough to say that the settlement amount in the bankruptcy case was a compromise--i.e., something less than claimed--of the trustee's claims to particular property. This settlement certainly does not fall within Halper 's language about judgments not rationally related to any identifiable loss, and therefore there is no basis for treating the trustee's claim against the Fields as a criminal proceeding.[2]
 
 
 9
 The Fields also argue that the bankruptcy settlement gives rise to collateral estoppel. Because the adversary proceeding did not resolve any fact in the Fields' favor, this argument does not present a colorable double jeopardy claim. See Bailey, 34 F.3d at 688.
 
 
 10
 Since the bankruptcy proceeding in this case cannot be deemed criminal, jeopardy did not attach and the Fields have no colorable double jeopardy claim. Therefore, we have no jurisdiction to entertain the Fields' interlocutory appeal.
 
 II.
 
 11
 The government appeals the order vacating that part of the restraining order covering substitute assets. Whether 18 U.S.C. Sec. 982 permits restraint of substitute assets before conviction is a question of first impression in this circuit. Authority from the other circuits is conflicting. Compare United States v. Ripinsky, 20 F.3d 359, 362-63 (9th Cir.1994) (pretrial restraint not permitted); United States v. Floyd, 992 F.2d 498, 502 (5th Cir.1993) (pretrial restraint not permitted); In re Assets of Martin, 1 F.3d 1351, 1357-61 (3d Cir.1993) (pretrial restraint not permitted under substantially identical provisions of RICO, 18 U.S.C. Sec. 1963) with In re Billman, 915 F.2d 916, 921 (4th Cir.1990) (pretrial restraint permitted under RICO, 18 U.S.C. Sec. 1963, provisions substantially identical to statute in issue here), cert. denied, 500 U.S. 952, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991); United States v. Regan, 858 F.2d 115, 121 (2d Cir.1988) (advising district courts to consider pretrial restraint of substitute assets under RICO when restraining fruits of crime would be burden to third parties).
 
 
 12
 Section 982(b)(1)(B)[3] provides that in cases of mail fraud forfeiture shall be governed by 21 U.S.C. Sec. 853(b), (c), (e), and (g) through (p) (1988). In turn, 21 U.S.C. Sec. 853(e)(1) authorizes pretrial restraint of "property described in subsection (a) of this section." Section 853(a) only refers to property associated with the crime.[4] An entirely distinct subsection of section 853, subsection (p), authorizes post-conviction forfeiture of substitute property if property listed in subsection (a) is unavailable.[5] Thus, section 853(e) authorizes pretrial restraint only of property associated with the crime, though subsection (p) allows the government to reach substitute assets after conviction.
 
 
 13
 The government would have us graft onto the language of section 853(e) a reference to section (p) that does not exist in the statute. The government reasons that the statute simply does not work well as written, because it may allow defendants to dissipate substitute assets before trial that would be subject to forfeiture after conviction. The government cites section 853(o ), stating that section 853 "shall be liberally construed to effectuate its remedial purposes." The government's argument focuses only on the government's interest in pursuing assets and ignores the fact that the statute represents a balance between the rights of the government and those of the accused. If we were to add to the statute to give the government the extra advantage it seeks, we would not "effectuate [the] remedial purposes" of the statute, we would be putting a thumb on the scales. Accord Floyd, 992 F.2d at 502 ("[T]his command for a liberal construction does not authorize us to amend by interpretation."); Ripinsky, 20 F.3d at 363.[6]
 
 
 14
 Since the language of the statute is unambiguous, there is no need to search for clues to Congress' intent in the legislative history. See Martin, 1 F.3d at 1359. However, because the government relies heavily on legislative history, we see fit to respond briefly. The Senate Report the government cites, S.Rep. No. 98-225, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 3182, does indeed support the idea that Congress wanted to improve the government's ability to prevent defendants from disposing of forfeitable assets. See id. at 1984 U.S.C.C.A.N. 3379, 3385. It does not follow that every possible means of achieving this goal must be considered implicit in the statute. Congress did in fact improve the government's position by permitting pre-indictment restraint of the fruits and instrumentalities of crime; therefore, the statute as written furthers Congress' announced goal. We have no basis to pursue that goal further than Congress did by writing in a provision to restrain substitute assets before trial. Moreover, the Third and Ninth Circuits have relied on legislative history discussing a similar provision in an earlier bill and have concluded that Congress did not omit substitute assets by oversight, but specifically designed the statute to exclude pretrial restraint of substitute assets. See Martin, 1 F.3d at 1360 (quoting S.Rep. No. 97-520, 97th Cong., 2d Sess. 110 n. 18 (1982)); Ripinsky, 20 F.3d at 364 n. 7. We find their reasoning persuasive.
 
 
 15
 We dismiss the Fields' appeal and affirm the order vacating the restraining order.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota
 
 
 [2]
 Our disposition of the Fields' Halper argument leaves to one side the question of whether there is any basis for considering the government a party to the adversary proceeding in the bankruptcy
 
 
 [3]
 Section 982(b)(1) reads as follows:
 Property subject to forfeiture under this section, any seizure and disposition thereof, and any administrative or judicial proceeding in relation thereto, shall be governed--
 (B) in the case of a forfeiture under subsection (a)(2) of this section, by subsections (b), (c), (e), and (g) through (p) of [21 U.S.C. Sec. 853].
 
 
 [4]
 Section 853(a) reads as follows:
 Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--
 (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
 (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.
 
 
 [5]
 Section 853(p) reads as follows:
 If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant--
 (1) cannot be located upon the exercise of due diligence;
 (2) has been transferred or sold to, or deposited with, a third party;
 (3) has been placed beyond the jurisdiction of the court;
 (4) has been substantially diminished in value; or
 (5) has been commingled with other property which cannot be divided without difficulty;
 the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).
 
 
 [6]
 The government also argues that we should infer permission to restrain substitute assets before trial from section 853(f), which the government says, gives permission to seize such assets. Floyd rebutted this argument, concluding that seizure under section 853(f) is only available for property subject to restraint under section 853(e). 992 F.2d at 502