**UNITED STATES of America,
Plaintiff,**

v.

**Richard A CAUSEY and Jeffrey
K. Skilling, Defendants.**

**No.  CRIM.A.  H–04–025.**

United States District Court,
S.D. Texas,
Houston Division.

March 18, 2004.

Reid H. Weingarten, Attorney at Law, Washington, DC, Mark J. Hulkower, Attorney at Law, Washington, DC, Barry S. Berger, Attorney at Law, Houston, TX, Ronald Gene Woods, Attorney at Law, Houston, TX, Daniel M. Petrocelli, O Melveny and Myers LLP, M. Randall Oppenheimer, O Melveny and Myers LLP, Los Angeles, CA, Jeffrey W. Kilduff, O Melveny and Myers LLP, Bruce Hiler, O Melveny Myers LLP, Washington, DC, Mark Holscher, O Melveny and Myers LLP, Los Angeles, CA, Robert M. Stern, O Melveny Myers LLP, Washington, DC, for defendants.

Richard A. Causey, The Woodlands, TX, pro se.

Jeffrey K. Skilling, Houston, TX, pro se.

Samuel W. Buell, U.S. Atty's Off, Boston, MA, Kathryn H. Ruemmler, U.S. Dept of Justice Crim Div, Enron Task Force, Washington, DC, for U.S.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court are Jeffrey K. Skilling's Motion to Dissolve Post–Indictment Restraining Order (Docket Entry No. 37) and the Government's Motion for Extension of Temporary Restraining Order and Application for Preliminary Injunction (Docket Entry No. 40). For the reasons set forth below, the Government's motion is moot, Skilling's motion will be denied, the existing restraining order will be extended until further order of this court, and the conference set for Friday, March 19, 2004, at 4:00 p.m., will be canceled.

### I. *Background*

On February 18, 2004, the United States filed a superseding indictment that charges Skilling with conspiracy, wire fraud, securities fraud, and insider trading (Docket Entry No. 16). The same day the United States filed under seal an ex parte application for a post-indictment, pre-conviction restraining order directed against more than $55 million of Skilling's assets (Docket Entry No. 21), which the court granted (Docket Entry No. 23). On February 19, 2004, the United States submitted an amended post-indictment restraining order in which it sought to correct the account number of a bank account subject to restraint (Docket Entry No. 28), which the court granted (Docket Entry No. 29). On March 9, 2004, Skilling filed the pending motion to dissolve (Docket Entry No. 37). On March 11, 2004, the Government filed its Motion for Extension of Temporary Restraining Order and Application for Preliminary Injunction (Docket Entry No. 40). That same day the court conducted a status conference at which it granted the Government's Motion to Extend Temporary Restraining Order until 5:00 p.m. on Friday, March 19, 2004, and ordered additional briefing on Skilling's motion to dissolve and the Government's motion for preliminary injunction (Docket Entry No. 49).

### II. *Government's Motion for Preliminary Injunction*

In its Supplemental Memorandum of Law (Docket Entry No. 50), "the government respectfully requests that the Court deny Skilling's motion to dissolve the restraining order, and that the Court contin-

ue to restrain the assets pending trial."[1] The Government explains that it

> refers to "restraining order" rather than "preliminary injunction" because that is the term used in 21 U.S.C. § 853(e) and *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) and its progeny. The term "preliminary injunction" is used in Rule 65, which, as we [*i.e.,* the Government] explain in detail below, the Government does not believe strictly applies in this case.[2]

The Government also explains that its request for continuation of the restraining order pending trial is based on its belief that Skilling should only be allowed to challenge the restraint at a hearing after he has made preliminary showings of improper restraint and need for the restrained property.[3] Because the Government now seeks to continue the restraining order pending trial, and states in its Supplemental Motion that it does not believe that Rule 65 applies in this case, the court concludes that the Government's Motion for Preliminary Injunction (Docket Entry No. 40) is moot.

### III. *Skilling's Motion to Dissolve*

Skilling argues that the court should dissolve the February 19 Post–Indictment Restraining Order "because [28 U.S.C.] § 2461(c), by its express terms, does not authorize pre-conviction restraint of alleg-

edly forfeitable assets, and because the order should have already automatically expired."[4] Skilling argues that if the court decides that a statutory basis exists for pre-conviction restraint of his assets that the court should conduct a hearing "regarding the forfeitability of the assets restrained."[5] In his Supplemental Memorandum (Docket Entry No. 47), Skilling argues that the plain language of § 2461(c) cannot be interpreted to authorize pre-conviction restraint, and that even if the court decides that § 2461(c) allows pre-conviction restraint, only property potentially subject to forfeiture as a result of offenses committed on or after the statute's effective date of August 23, 2000, can be restrained. Skilling also argues that he is entitled to an adversarial hearing.

### A. Does 28 U.S.C. § 2461(c) authorize pre-conviction restraint of allegedly forfeitable assets?

Skilling argues that "because this is not a drug case, and because sections 853 and 2461(c) may not be invoked pre-conviction in securities and wire fraud cases, there is no statutory basis for the restraints that have issued."[6] The Government argues that the court has "appropriately issued a restraining order in this case."[7] The court agrees with the Government.

The superseding indictment charges Skilling, *inter alia,* with conspiracy, wire

---

1. Government's Supplemental Memorandum, Docket Entry No. 50, p. 38. The Government asserts that its

   > motion for a post-indictment restraining order assumed the procedures for a hearing under [Federal] Rule [of Civil Procedure] 65 applied. However, in light of the Court's direction to the parties to address the applicability of *Thier* and Rule 65, the Government has considered the case law and represents here what it believes to be the correct position under the law.
   >
   > *Id.* at p. 28 n. 24.

2. *Id.,* p. 24 n. 21.

3. *Id.,* p. 28.

4. Skilling's Motion with Memorandum in Support, Docket Entry No. 37, p. 5.

5. *Id.,* p. 8.

6. Skilling's Supplemental Memorandum, Docket Entry No. 47, p. 2.

7. Government's Supplemental Memorandum, Docket Entry No. 50, p. 2.

fraud, and securities fraud[8] and alleges that certain enumerated property is subject to forfeiture "pursuant to the provisions of Title 18, United States Code, Section 981, and Title 28, United States Code, Section 2461."[9] The Government asserts that

> Section 981 authorizes *civil* forfeiture that "constitutes or is derived from proceeds traceable to" wire fraud or an offense involving "fraud in connection with the sale of securities." 18 U.S.C. § 981(a)(1)(C)(incorporating 18 U.S.C. § 1956(c)(7), which in turn incorporates 18 U.S.C. § 1961(1)(D)). Section 981 forms the basis for criminal forfeiture through the application of 28 U.S.C. § 2461(c), which allows criminal forfeiture to be sought anytime there is a civil forfeiture provision but no corresponding criminal forfeiture statute.[10]

Skilling concedes that 28 U.S.C. § 2461(c) allows criminal forfeiture to be sought when there is a civil forfeiture provision but no corresponding criminal forfeiture statute.[11] Although Skilling argues that the phrase "upon conviction" used in § 2461(c) "makes clear that [21 U.S.C.] § 853 is incorporated for post-conviction proceedings only,"[12] the court concludes that Skilling's argument is contrary to the plain language of the statute.

Section 2461(c) provides:

> If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. 853), other than subsection (d) of that section.

28 U.S.C. § 2461(c).[13] Congress's use of the plural "procedures of ... (21 U.S.C. § 853)" in § 2461(c)'s directive and Congress's express exclusion of only subsection (d) of § 853 from those "procedures" makes clear that § 2461(c) incorporates all

---

**8.** See Superseding Indictment, Docket Entry No. 16.

**9.** *Id.*, p. 54.

**10.** Government's Supplemental Memorandum, Docket Entry No. 50, p. 2 n. 2. Civil forfeiture of property derived from wire fraud is authorized by 18 U.S.C. § 981(a)(1)(D)(vi), which provides for the forfeiture of "[a]ny property, real or personal, which represents or is traceable to the gross receipts obtained directly or indirectly, from a violation of-... (vi) section 1343 (relating to wire fraud)." Civil forfeiture of property derived from securities fraud is authorized by 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)

states that "the term 'specified unlawful activity' means-(A) any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." Section 1961(1)(D) includes "any offense involving ... fraud in the sale of securities."

**11.** Skilling's Supplemental Memorandum, Docket Entry No. 47, p. 5.

**12.** *Id.*, p. 7.

**13.** Subsection (d) creates a rebuttable presumption at trial that any property belonging to a person convicted of a felony drug offense is subject to forfeiture if the Government establishes by a preponderance of the evidence that the property was acquired during the period of the violation and there was no likely source or such property other than the violation.

the other subsections of § 853, *i.e.*, subsections (a)-(c) and (e)-(q). Included among these is subsection (e), which provides for the post-indictment, pre-conviction restraint of assets directly traceable to the underlying offense described in subsection (a).[14]

In support of his argument that § 2461(c) cannot be interpreted to authorize pre-conviction restraint of his assets,[15] Skilling cites *United States v. Floyd*, 992 F.2d 498, 500–02 (5th Cir.1993), in which the court considered whether substitute assets described in § 853(p) were subject to pre-conviction restraint under § 853(e).

Section 853 was applicable in *Floyd* pursuant to the general criminal forfeiture statute, 18 U.S.C. § 982(b)(1), which, like § 2461(c), incorporates by reference certain subsections of 21 U.S.C. § 853.

Skilling asserts that in *Floyd* "Judges Higginbotham, King, and DeMoss were confronted with the question of whether 21 U.S.C. § 853 applied pre-conviction, thereby allowing the government to seek pretrial restraints of substitute assets."[16] Contrary to Skilling's assertion, however, the issue before the court in *Floyd* was not whether § 853 applied pre-conviction, but whether substitute assets described in § 853(p) are subject to pre-conviction restraint under § 853(e).[17] 992 F.2d at 501

---

14. 21 U.S.C. § 853(a) provides:

(a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law-

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

15. Skilling's Supplemental Memorandum, Docket Entry No. 47, pp. 8–9.

16. *Id.*, p. 9.

17. Section 853(e) provides:

(e) Protective orders

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section-

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

*Provided*, however, that an order entered pursuant to subparagraph (B) shall be effec-

("The question is whether the government may restrain substitute assets before conviction under § 853(e) notwithstanding that provision's explicit reference to the property described in § 853(a). We hold that it cannot.").

While the *Floyd* court held that substitute assets described in § 853(p) are not subject to pre-conviction restraint under § 853(e), the fact that assets directly traceable to the offense described in § 853(a) are subject to pre-conviction restraint pursuant to § 853(e) was never in doubt. Moreover, the court's holding that substitute assets described in § 853(p) are not subject to pre-conviction restraint was based on the plain meaning of the statute:

> Congress made specific reference to the property described in § 853(a), and that description does not include substitute assets. Congress treated substitute assets in a different section, § 853(p). To allow the government to freeze Floyd's untainted assets would require us to interpret the phrase "property described in subsection (a)" to mean property described in subsection (a) *and* (p).

*Floyd,* 992 F.2d at 502.

In 28 U.S.C. § 2461(c) Congress expressly provided that "upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. [§ ]853), *other than subsection (d) of that section*" (emphasis added). By this language Congress expressly excluded § 853(d) from the procedures for effecting criminal forfeiture incorporated by reference into § 2461(c). Congress treated post-indictment, pre-conviction restraint of assets in a different subsection, *i.e.,* § 853(e). Acceptance of Skilling's argument that the phrase "upon

conviction" included in § 2461(c) limits application of § 853's procedures to post-conviction proceedings would require the court to interpret the phrase "other than subsection (d)" used in § 2461(c) to include all the subsections that address pre-conviction issues, *i.e.,* subsections (d), (e), (f), and parts of (k).[18] Like the *Floyd* court, which rejected the Government's invitation to read § 853(e)'s reference to subsection (a) as meaning subsections (a) *and* (p), this court rejects Skilling's invitation to read § 2461(c)'s incorporation of the "procedures set forth ... (21 U.S.C. 853), other than subsection (d) of that section" to mean other than subsections (d), (e), (f), and parts of (k). *See Floyd,* 992 F.2d at 502.

Section 2461(c) plainly incorporates the provisions and procedures set forth in 21 U.S.C. § 853, excluding only subsection (d), which relates to rebuttable presumptions created at trial in narcotics cases. Because § 853(e), which allows post-indictment, pre-conviction restraint of property that would in the event of conviction be subject to forfeiture, is not expressly excluded from the incorporation language of § 2461(c), the court concludes that subsection (e) is included in the incorporation language. *See Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances."). *See also United States v. Kirschenbaum,* 156 F.3d 784, 789–791 (7th Cir.1998) (holding that 18 U.S.C. § 982(b)(1)'s general incorporation of the forfeiture procedures of 21 U.S.C. § 853 included the pre-conviction restraint provisions of § 853(e)); *United States v. Jones,*

---

tive for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

**18.** Subsection (f) authorizes pre-conviction seizure of property.

160 F.3d 641, 644 n. 2 (10th Cir.1998) (same); *United States v. Field,* 62 F.3d 246, 248–249 (8th Cir.1995) (same).[19] Skilling's argument that *forfeiture* is allowed only upon conviction is not at odds with this conclusion. While forfeiture can only be ordered upon conviction, assets potentially subject to forfeiture because they are directly traceable to the charged offenses can be *restrained* prior to conviction under the procedures set forth in 21 U.S.C. § 853(e), which is incorporated by reference into 28 U.S.C. § 2461(c).

**B. Does 28 U.S.C. § 2461(c) apply to property acquired before its effective date of August 23, 2000?**

█ Asserting that Congress enacted § 2461(c) on April 25, 2000,[20] and that it provided that the statute would take effect 120 days later-on August 23, 2000, Skilling argues that § 2461(c) cannot be applied to forfeit or restrain $9,190,260.92 in funds that he obtained before § 2461(c)'s effective date.[21] In support of this argument Skilling cites the ex post facto clause of the United States Constitution, art. I, § 9, cl. 3, and *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

The government concedes that the criminal forfeiture of the proceeds of wire fraud and securities fraud, as charged in this case, was not permitted until Congress enacted 28 U.S.C. § 2461(c) and amended 18 U.S.C. § 981(a)(1)(C) as part of CAFRA, effective August 23, 2000.[22] The Government also concedes that "[a] statutory change allowing for the criminal forfeiture of proceeds, where no such authority had previously existed, does increase the severity of punishment for a crime and *does,* therefore, implicate the Ex Post Facto clause." [23] Nevertheless, the Government argues that because Skilling is charged, *inter alia,* with engaging in conspiracies to commit wire fraud and securities fraud, and because the crime of conspiracy is a continuing offense, a provision imposing a greater penalty for conspiracy does not violate the constitutional prohibition against ex post facto laws.[24] Citing *United States v. Garcia Abrego,* 141 F.3d 142, 167 (5th Cir.), *cert. denied,* 525 U.S. 878, 119 S.Ct. 182, 142 L.Ed.2d 148 (1998), the Government argues that

> Skilling's conspiracy charge alone supports the forfeiture of all criminal proceeds generated during the entire course of the conspiracy, including proceeds generated during that part of the conspiracy that predates the statute's effective date. Such application of the statute cannot violate the ex post facto clause.[25]

In *Garcia Abrego* the defendant argued that his conviction for conspiracy under 18 U.S.C. § 1956(h) violated the ex post facto clause if any of the conduct in furtherance

---

19. Skilling's argument that these cases are inapposite because unlike § 2461(c), " § 982[(b)(1)], which cross-references § 853, has no 'upon conviction' or 'forfeiture-only' limitations" (Docket Entry No. 47, p. 15), is at best disingenuous because the operative subsections of 18 U.S.C. § 982(a) allow courts to order forfeiture only "in imposing sentence" or "in sentencing a defendant convicted of an offense . . ." *See* 18 U.S.C. § 982(a)(1)-(8).

20. See Civil Asset Forfeiture Reform Act (CAFRA), Pub.L.No. 106–185, 114 Stat. 202 (April 25, 2000).

21. Skilling's Supplemental Memorandum, Docket Entry No. 47, pp. 16–17.

22. Government's Supplemental Memorandum, Docket Entry No. 50, p. 21.

23. *Id.*

24. *Id.,* pp. 21–22.

25. *Id.,* p. 22.

of the conspiracy occurred before the effective date of the underlying statute. 141 F.3d at 167. Because conspiracy is a continuing offense the *Garcia Abrego* court rejected the defendant's argument. *Id.* Nevertheless, the court cautioned that

> [i]n circumstances in which many acts in a continuing offense occurred before the effective date of the statute criminalizing the continuing offense, the trial court must inform the jury of the effective date of the statute and instruct the jury that, in order to convict the defendant of the offense, it must find that the offense continued after the effective date of the statute.

*Garcia Abrego,* 141 F.3d at 167. The court then reviewed the evidence presented at trial and concluded that several acts undertaken in furtherance of the conspiracy had occurred after the effective date of the underlying statute. *Id.*

Although the *Garcia Abrego* court recognized conspiracy as a continuing offense, it did not recognize acts conducted before the effective date of the underlying statute as sufficient to justify punishment under that statute. Nor did *Garcia Abrego* involve the forfeiture of assets acquired before the effective date of the underlying statute. The Government has not cited the court to any case that has allowed the criminal forfeiture of assets acquired prior to the effective date of the statute authorizing the criminal forfeiture. The absence of authority supporting the Government's possession; the Government's concession that the criminal forfeiture of proceeds from wire fraud and securities fraud as charged against Skilling was not permitted until

Congress enacted 28 U.S.C. § 2461(c), effective August 23, 2000; [26] and the Government's concession that "[a] statutory change allowing for the criminal forfeiture of proceeds, where no such authority had previously existed ... does ... implicate the ex post facto clause," [27] make the court skeptical of the Government's argument that assets acquired by Skilling prior to § 2461(c)'s effective date of August 23, 2000, are subject to criminal forfeiture under that statute. [28]

Nevertheless, at this juncture the court remains persuaded that continued restraint of Skilling's assets is warranted because the Superseding Indictment alleges that they are subject to forfeiture on the basis of acts that occurred both before and after § 2461(c)'s effective date. The court's conclusion that these assets remain subject to restraint is without prejudice to Skilling's right to seek relief pursuant to a properly supported motion showing, at a minimum, (1) which assets he acquired before August 23, 2000, (2) that those assets would not be subject to forfeiture upon conviction, and (3) an explanation of the distinction between the procedural and substantive effects of the forfeiture provisions at issue.

## C. Is Skilling entitled to a hearing?

█ Citing *United States v. Thier,* 801 F.2d 1463 (5th Cir.1986), *modified by* 809 F.2d 249 (5th Cir.1987), and Fed.R.Civ.P. 65, Skilling argues that "[u]nder [Federal] Rule [of Civil Procedure] 65 and § 853, *ex parte* temporary restraining orders may issue, but an 'adversary hearing must follow the order and precede the entry of an

---

26. *Id.,* p. 21.

27. *Id.*

28. Although the Government also argues that the retrospective application of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) does

not violate "ordinary principles of statutory construction," Docket Entry No. 50, p. 22, the court is not persuaded that this argument impacts the question of whether assets acquired prior to § 2461(c)'s enactment can be subject to forfeiture under § 2461(c) without violating the Ex Post Facto Clause.

injunction that freezes . . . [his] assets for any further period of time.' " [29] Skilling argues that at such a hearing he should be allowed to rebut the grand jury's findings that certain assets are potentially subject to forfeiture. Skilling also asserts that virtually all of his assets have been restrained and that he has ongoing living and business expenses, insurance, taxes, and other necessities for which he must pay.[30]

In *Thier* the Fifth Circuit held that the requirements of Rule 65, including the hearing requirements and time limits on ex parte restraining orders, apply to ex parte restraining orders and injunctions issued under 21 U.S.C. § 853(e)(1)(A). 801 F.2d at 1468–69. *Accord United States v. Crozier,* 777 F.2d 1376, 1384 (9th Cir.1985). In *Thier* the court held that the following four elements formed "an appropriate outline for the government's burden in a hearing pursuant to a § 853(e)(1)(A) injunction request":

> (1) "a substantial likelihood that the plaintiff will ultimately prevail on the merits of his claim;" (2) "the injunction must be necessary to prevent irreparable harm;" (3) "the threatened injury to the plaintiffs must outweigh the harm the injunction might do the defendants;" and (4) the "entry of an injunction must be consistent with the public interest."

801 F.2d at 1470 (quoting *Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 302 (5th Cir.1979)), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

Three years later in *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), the Supreme Court addressed the burden that the Government must meet when it seeks a restraining order under § 853(e). In *Mon-*

*santo* the Court held that due process permits the government to restrain assets needed to pay attorneys' fees as long as the government shows that there is probable cause to believe that the assets are subject to forfeiture. *Id.* at 2666 ("We conclude . . . that assets in a defendant's possession may be restrained in the way they were here based on a finding of probable cause to believe that the assets are forfeitable."). Because the district court held an extensive four-day hearing on the issue of probable cause and because the Second Circuit had not addressed the procedural due process issue, the Court did not consider whether due process requires a pre-restraint hearing. *Monsanto,* 109 S.Ct. at 2661 and 2666 n. 10 ("We do not consider today . . . whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed.").

In the recent case of *United States v. Melrose East Subdivision,* 357 F.3d 493, 498 (5th Cir. January 13, 2004), the court considered the evidentiary standard that courts should employ in ruling on a motion to modify a pretrial restraining order under 18 U.S.C. § 983(j)(1)(A). Noting that in *Monsanto* the Supreme Court provided guidance in a closely related context, the *Melrose* court held that probable cause, as opposed to a higher standard such as substantial likelihood of success on the merits, is the applicable standard. *Id.* at p. 501 ("probable cause is the proper standard of proof for continuing a pretrial restraining order under § 983(j)(1)(A)"). Because *Thier* held that substantial likelihood of success on the merits was the correct standard to apply in the cases involving restraining orders issued under 21 U.S.C. § 853(e), the *Melrose* court recognized that "[s]ome aspects of *Thier* appear to be

---

**29.** Skilling's Supplemental Memorandum, Docket Entry No. 47, pp. 3 and 17.

**30.** *Id.* at p. 4.

in tension with *Monsanto*, and [that] future cases may need to consider whether certain portions of *Thier* were overruled" by *Monsanto*. *Id.* at p. 504. The *Melrose* court also noted that the case before it "does not implicate the question whether the district court may in its discretion hold a pre-restraint hearing, or indeed whether it must hold a pre-restraint hearing as a matter of due process." *Id.* at 499 n. 3. However, citing *United States v. Monsanto*, 924 F.2d 1186, 1192–1193 (2d Cir.1991) (*en banc*), *on remand from* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), and *United States v. Musson*, 802 F.2d 384, 387 (10th Cir.1986), the court noted that "[t]here is authority for the proposition that due process does not require a pre-restraint hearing in the context of *post-indictment* restraining orders under 21 U.S.C. § 853(e)(1)(A), the criminal analogue of § 983(j)(1)(A)." *Id.*

Skilling argues that *Monsanto's* express refusal to determine "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed," 109 S.Ct. at 2666 n. 10, leaves intact *Thier's* conclusion that a pretrial adversary hearing is required where certain constitutional rights are implicated.[31] In support of this argument Skilling cites the Ninth Circuit's opinions in *United States v. Crozier*, 777 F.2d 1376 (9th Cir.1985), and *United States v. Roth*, 912 F.2d 1131 (9th Cir.1990). In *Crozier*, 777 F.2d at 1383–1384, the court adopted a view similar to that expressed in *Thier*, and in the wake of *Monsanto* the court reaffirmed *Crozier* and its progeny to the extent that those cases generally apply Rule 65, but recognizing that *Monsanto* requires only a showing of probable cause in order to con-

tinue a restraining order. *Roth*, 912 F.2d at 1132–33.

Acknowledging that "[w]hether the automatic hearing traditionally required by Rule 65, and encompassed by *Thier*, is still in effect has not been addressed in this Circuit," [32] the Government argues that

since *Monsanto* was decided, courts have found that a hearing on a post-indictment restraining order should not be held unless the defendant makes a preliminary showing: First, that he has a specific need for the assets for either attorney's fees or necessary living expenses, and second, a prima facie showing of reason to believe the restrained assets are not proceeds, or traceable proceeds, of the crimes. Only if *both* of these elements are met, is the defendant entitled to a hearing.[33]

In support of this argument, the Government cites *United States v. Jones*, 160 F.3d 641, 647 (10th Cir.1998), as a case in which the court "found that a post-restraint pre-trial hearing is required only upon a properly supported motion by defendant." [34]

The *Jones* court held that to receive a hearing "a defendant must demonstrate to the court's satisfaction that [he] has no assets, other than those restrained, with which to retain private counsel and provide for [himself] and [his] family," *id.*, and that "[a] defendant must also make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets" are proceeds, or traceable proceeds, of the charged offenses. *Id. See also United States v. Jamieson*, 189 F.Supp.2d 754, 757 (N.D.Ohio 2002) ("The Defendant has the burden of production of evidence which

---

**31.** *Id.* at p. 19.

**32.** Government's Supplemental Memorandum, Docket Entry No. 50, p. 28.

**33.** *Id.*

**34.** *Id.*

would lead the Court to believe that there are assets which should not be burdened by the restraining order.").

For the reasons cogently explained by the Tenth Circuit in *Jones,* 160 F.3d at 641, the court is persuaded that neither the statutory procedures governing forfeiture set forth in 21 U.S.C. § 853 nor the demands of due process require the court to conduct a post-restraint, pre-conviction hearing before it may continue to restrain Skilling's assets. Such a hearing is not required absent a prima facie showing, made through a properly supported motion, that Skilling needs the assets for reasonable and necessary legal and/or living expenses, and that the grand jury erred in determining the assets are either proceeds from or traceable to the offenses charged in the Superseding Indictment.[35]

### IV. *Conclusions and Order*

For the reasons explained above, the court concludes (1) that assets potentially subject to forfeiture because they are directly traceable to the charged offenses can be restrained prior to conviction under the procedures set forth in 21 U.S.C. § 853(e), which is incorporated by reference into 28 U.S.C. § 2461(c); (2) that continued restraint of Skilling's assets is warranted because the Superseding Indictment alleges that they are subject to forfeiture on the basis of acts that occurred both before and after § 2461(c)'s effective date; and (3) that Skilling is not entitled to an adversarial hearing absent a prima fa-

cie showing made via a properly supported motion that he needs the restrained assets for reasonable and necessary legal and/or living expenses and that the grand jury erred in determining the restrained assets are traceable to the offenses charged in the Superseding Indictment.

Skilling's Motion to Dissolve Post–Indictment Restraining Order (Docket Entry No. 37) is **DENIED**, the Government's Motion for Preliminary Injunction (Docket Entry No. 40) is **MOOT**, and the existing restraining order is **EXTENDED** until further order of this court. The conference set for Friday, March 19, 2004, at 4:00 p.m., is **CANCELED**.

---

**35.** Perhaps because of the tight briefing schedule that the court imposed on the parties, neither side has explained to the court's satisfaction who would bear the burden of segregating assets potentially subject to forfeiture from assets not potentially subject to forfeiture, or what standards the court would apply in determining that the burden has been satisfied. Should Skilling file a motion for a hearing, the court will require briefing from both sides on these issues well in advance of any hearing date. Moreover, the court is persuaded that the requirements for a hearing discussed in this section apply to any hearing that Skilling might seek regarding the pre-conviction restraint of his assets regardless of whether the hearing is sought for purposes of lifting the restraint on assets allegedly acquired prior to the effective date of 28 U.S.C. § 2416(c) (discussed in section III.B of this Memorandum and Order), or to any other assets that he may allege should not be subject to continued pre-conviction restraint.