# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 17-10624

——————

United States Court of Appeals
Fifth Circuit

**FILED**
August 16, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

REAL PROPERTY LOCATED AT 1407 NORTH COLLINS STREET, ARLINGTON, TEXAS; REAL PROPERTY LOCATED AT 4418 MAPLE AVENUE, DALLAS, TEXAS; REAL PROPERTY LOCATED AT 701 EAST 5TH STREET, AUSTIN, TEXAS; REAL PROPERTY LOCATED AT 9515 SKILLMAN STREET, DALLAS, TEXAS; REAL PROPERTY LOCATED AT 5800 MAPLE AVENUE, DALLAS, TEXAS; ET AL;

      Defendants

v.

GERALD SHULTS; GAS PIPE, INCORPORATED; AMY LYNN, INCORPORATED; RIDGLEA COMPLEX MANAGEMENT, INCORPORATED; RAPIDS CAMP LODGE, INCORPORATED; AMY LYNN HERRIG; DAN CHRISTOPHER HERRIG,

      Claimants - Appellants

_____

Cons w/ 17-10626

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

GAS PIPE, INCORPORATED; AMY LYNN, INCORPORATED; GERALD SHULTS, also known as Jerry; AMY HERRIG; RAPIDS CAMP LODGE,

No. 17-10624
c/w No. 17-10626

INCORPORATED; RIDGLEA COMPLEX MANAGEMENT,
INCORPORATED,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before DAVIS, HAYNES, and DUNCAN, Circuit Judges.

HAYNES, Circuit Judge:

Claimants challenge the pretrial restraint of their property under civil forfeiture laws, arguing the Government failed to show the requisite probable cause. The district court denied Claimants' motion to release their property. For the reasons set forth below, we AFFIRM.

## I. Background

The grand jury's indictment in this case charges a scheme to sell a designer drug known as "spice" through Gas Pipe, Inc. and Amy Lynn Inc., which has locations throughout Texas and New Mexico. The indictment accused Gerald Shults and his daughter Amy Lynn Herrig[1] of conspiring to market the drug as "herbal incense," "potpourri," or "aroma therapy" and then laundering the proceeds through related businesses.

---

[1] We will refer to the "defendant Claimants" when discussing the Claimants charged in the indictment, which includes Shults, Herrig, Gas Pipe Inc., Amy Lynn, Inc., Ridglea Complex Management, Inc., and Rapids Camp Lodge, Inc. All the defendant Claimants were charged on the counts relevant to this appeal except Ridglea Complex Management, Inc. and Rapids Camp Lodge, Inc., which were charged with only the money laundering conspiracy count.

No. 17-10624
c/w No. 17-10626

Although these products were labeled as "synthetic cannabinoid free" and "not for human consumption," the indictment alleged that they in fact contained synthetic cannabinoids that were a controlled substance or controlled substance analogues intended for human consumption.

The Government executed civil seizure warrants against Claimants' accounts at UBS Financial Services. UBS froze the accounts, and the Government filed a civil forfeiture suit which, as amended, listed UBS accounts totaling more than $7 million as defendants in rem. The Government subsequently seized the UBS accounts pursuant to an arrest warrant under Federal Rule of Civil Procedure Supplemental Rule G(3)(b)(ii). The Government alleged that the defendant Claimants used the UBS accounts to receive proceeds of the spice scheme and conceal unlawful activity.

The Government's civil forfeiture suit also listed several pieces of real property as defendants in rem. The properties include Gas Pipe store locations and properties allegedly purchased with funds traceable to the charged crimes. The Government has not seized this real property, but it filed notices of lis pendens pursuant to 18 U.S.C. § 985.

Claimants filed a motion asking the district court to lift the pretrial restraints on their UBS accounts and real property, arguing the Government failed to show probable cause that the property is subject to forfeiture. The district court denied the motion, and Claimants filed this interlocutory appeal.

## II. Jurisdiction

The parties dispute whether we have jurisdiction over this appeal. Claimants invoke 28 U.S.C. § 1292(a)(1), which allows interlocutory appeal of orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." The Government argues § 1292(a)(1) does not apply because no injunction is involved. We conclude that

3

No. 17-10624
c/w No. 17-10626

jurisdiction exists under § 1292(a)(1) because, based on the law in this circuit, the district court's order has "the practical effect" of granting or denying an injunction. *See Abbott v. Perez*, 138 S. Ct. 2305, 2319–20 (2018); *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 352 (5th Cir. 2004) (per curiam) (quoting *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992)). As to the Government's seizure of the UBS accounts, we have previously relied on § 1292(a)(1) to review appeals seeking the release of assets in civil and criminal forfeiture cases. *See United States v. Melrose E. Subdivision*, 357 F.3d 493, 496–98 & n.2 (5th Cir. 2004) (reviewing pretrial restraining order issued under 18 U.S.C. § 983(j)(1)(A)); *United States v. Floyd*, 992 F.2d 498, 499–500 (5th Cir. 1993) (reviewing pretrial restraining order issued under 21 U.S.C. § 853(e)(1)(A), stating that "pretrial asset restraining orders are appealable as 'injunctions' under § 1292(a)(1)").[2]

The Government argues *Floyd* is distinguishable because there the order operated like an injunction by requiring the defendant to do something (i.e., to deposit money subject to forfeiture with the court). But our jurisdictional analysis in *Floyd* did not rely on that fact. *See* 992 F.2d at 500. Moreover, in *Melrose*, the order did not require the defendant to do anything; instead, it simply enjoined the defendant from using the frozen property. *See* 357 F.3d at 496–97. Yet we cited § 1292(a)(1) and *Floyd* in treating that order as an immediately reviewable injunction. *See id.* at 498 n.2. Here, the district

---

[2] Although *Floyd* and *Melrose* involved pretrial restraining orders and this appeal challenges an order denying a challenge to the seizure of property by warrant, the practical effect of seizure warrants is as severe as that of restraining orders, if not more so. *See Melrose*, 357 F.3d at 504 (stating that pretrial restraining orders are "preferable, somewhat less restrictive alternatives to outright seizure" (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 58–59, 62 (1993))).

4

No. 17-10624
c/w No. 17-10626

court's order has the same effect—it enjoins Claimants from using the UBS accounts while refusing to order the Government to unfreeze them. We therefore see no principled reason to treat this order differently.[3]

As to the lis pendens on Claimants' real property, we have invoked § 1292(a)(1) to review an order releasing real property from a lis pendens. *See Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972) (per curiam). There, the district court lifted the lis pendens from property in a fiduciary duty suit against corporate officers, and the corporation appealed. *See id.* at 1103. We considered our jurisdiction and concluded that "the case should be treated in the same manner as a denial, dissolution, or modification of an injunction." *Id.* at 1104 (citing, inter alia, 28 U.S.C. § 1292(a)(1)).

Our opinion in *Beefy King* did not elaborate on the issue. But in discussing the separate issue of why Florida law allowed courts to discharge a notice of lis pendens in the same way courts dissolve injunctions, we observed that "the effect of a lis pendens on the owner of property . . . is constraining." *Id.* "For all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of the lawsuit." *Id.*

The same rationale explains our conclusion in *Beefy King* that an order releasing property from a lis pendens is immediately appealable under §

---

[3] Other circuit courts have likewise held that appeals arguing for release of frozen assets are reviewable under § 1292(a)(1). *See, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1250 & n.4, 1252 (11th Cir. 2009); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 413–15 (D.C. Cir. 2008), *abrogated on other grounds by Kaley v. United States*, 571 U.S. 320 (2014); *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998); *see also* 16 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3922.3 (3d ed. 2018) ("Orders controlling the use of property involved in forfeiture proceedings have been held [immediately] appealable, no doubt in part because of the drastic consequences threatened by modern uses of forfeiture.").

5

No. 17-10624
c/w No. 17-10626

1292(a)(1).[4] *See id.* Although here we deal with an order declining to release property from a lis pendens, our emphasis in *Beefy King* on how a lis pendens restrains the owner's use of property has even more force in this context. *Cf.* 15A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3914.2 (2d ed. 2018) (stating that case law "belie[s] any prospect of a simple rule that appeal can be taken from orders denying security but not orders granting security"). We conclude, therefore, that we also have jurisdiction to entertain Claimants' appeal as to the lis pendens.

## III. Standard of Review

We review the district court's decision de novo because whether to grant or deny injunctive relief by denying a motion to lift pretrial property restraints turns on whether probable cause exists. "[T]he question of whether the facts are sufficient to constitute probable cause is a question of law" subject to de novo review. *Melrose*, 357 F.3d at 498. Whether the district court applied the proper standard of proof is also a question of law reviewed de novo. *Id.*

## IV. Discussion

The Government may restrain property prior to trial when there is probable cause to think the property is forfeitable. *See Kaley v. United States*, 571 U.S. 320, 323–24 (2014); *Melrose*, 357 F.3d at 503–04 (holding that continuing a pretrial restraining order under 18 U.S.C. § 983(j)(1)(A) requires a showing of probable cause, consistent with "the standard for obtaining the alternative device for preserving assets subject to forfeiture: outright seizure"). For probable cause to exist, "[t]here must be probable cause to think (1) that

---

[4] That the Florida law at issue in *Beefy King* allowed courts to "control and discharge [a] notice of lis pendens as [courts] may grant and dissolve injunctions" could not have grounded our jurisdictional conclusions in that case, as state law does not create federal court jurisdiction. *See Beefy King*, 464 F.2d at 1104 (discussing FLA. STAT. § 48.23(3)).

the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 571 U.S. at 323–24.

The probable cause standard "is not a high bar," requiring "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* at 338 (internal quotation marks and alteration omitted). "Previous forfeiture cases have defined probable cause as 'a reasonable ground for belief . . . supported by less than prima facie proof but more than mere suspicion.'" *Melrose*, 357 F.3d at 505–06 (quoting *United States v. 1988 Oldsmobile Cutlass Supreme 2 Door*, 983 F.2d 670, 674 (5th Cir. 1993)). The court considers "all of the circumstances" and takes a "common sense view to the realities of normal life." *Id.* A grand jury indictment establishes probable cause to think a defendant committed an offense permitting forfeiture. *Kaley*, 571 U.S. at 340–41.

## A. Forfeiture Based on Money Laundering

### 1. Sufficiency of the Complaint

We first address Claimants' argument that the district court wrongly reviewed the Government's forfeiture allegations as to money laundering based on "the minimal standards applicable to a motion to dismiss . . . in an ordinary civil case," instead of the more stringent standard applied to civil forfeiture suits. *See* FED. R. CIV. P. SUPP. R. G(2)(f) (requiring civil forfeiture complaints to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial").

Assuming, arguendo, Supplemental Rule G(2)(f) applies in reviewing pretrial property restraints outside the motion-to-dismiss context, we conclude the district court used the right standard. The district court asked whether the Government's complaint "demonstrated with sufficient particularity for

the current stage of the proceedings that Defendants intentionally commingled tainted funds with untainted funds for the purpose of facilitating the alleged money laundering." The district court also explained why the Government's complaint "set[] forth specific facts to show how each of the items of real or personal property identified in the Claimants' Motions is connected to the alleged criminal activity."

These statements show that the district court required the Government to go beyond the basic pleading standards for ordinary civil complaints and, as explained further below, to plead enough facts to support "a reasonable belief" that it will meet its trial burden as to forfeiture based on money laundering. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of *specifics*, but only enough facts to state a claim to relief that is plausible on its face." (emphasis added)).

2.  Connection of Untainted Funds to Money Laundering

Claimants argue the Government has restrained "untainted" property without probable cause to think "the property at issue has the requisite connection" to money laundering.[5] *Kaley*, 571 U.S. at 324. They contend the district court wrongly accepted the Government's theory that simply commingling untainted and tainted funds renders the untainted funds, and property traceable to them, subject to forfeiture. The problem with Claimants' argument is the Government has not alleged mere commingling but, instead, commingling in order to hide criminal proceeds, which establishes the requisite connection in this circuit.

---

[5] The purportedly untainted property consists of funds that predate the alleged spice scheme and property allegedly purchased with or otherwise traceable to such funds.

8

No. 17-10624
c/w No. 17-10626

Any property "involved in" money laundering, or property traceable to such property, is subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(A). Property is "involved" with money laundering if it is used "to facilitate" the laundering. *See United States v. Wyly*, 193 F.3d 289, 302 (5th Cir. 1999); *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997). "Facilitation occurs when the property makes the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'" *Wyly*, 193 F.3d at 302 (quoting *Tencer*, 107 F.3d at 1134)). Although "merely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture," untainted funds are forfeitable if a defendant commingled them with tainted funds "to disguise the nature and source of his scheme." *Tencer*, 107 F.3d at 1134–35.

Here, the Government alleged in its verified complaint that the defendant Claimants commingled tainted and untainted funds in the UBS accounts to conceal or disguise the tainted funds. Some commingled funds allegedly also secured a loan that financed the alleged spice scheme and which was repaid with criminal proceeds. Consistent with these allegations, the grand jury's indictment charged the defendant Claimants with conspiracy to commit money laundering, including by transferring criminal proceeds to various UBS accounts and commingling criminal proceeds with legitimately earned assets.

Considering these allegations alongside "all of the circumstances" alleged and taking a "common sense view to the realities of normal life," there is "a fair probability" that the defendant Claimants' alleged commingling was designed to conceal or disguise criminal proceeds. *See Melrose*, 357 F.3d at 505–06; *Kaley*, 571 U.S. at 338; *Tencer*, 107 F.3d at 1134–35. Specifically, the Government's complaint alleged that the defendant Claimants commingled the funds while working with a local, identified drug trafficking group to distribute

9

spice. Indeed, law enforcement allegedly made multiple purchases of spice, discovered an active spice manufacturing facility, and seized a large amount of suspected spice and related ingredients at Gas Pipe locations. Although the Government has not alleged facts specifically showing intent to conceal or disguise (e.g., use of false identities), probable cause may be "supported by less than prima facie proof." *Melrose*, 357 F.3d at 505–06 (quoting *1988 Oldsmobile*, 983 F.2d at 674).

There is therefore enough in the Government's complaint to show probable cause and, assuming Supplemental Rule G(f)(2) applies, to also support "a reasonable belief" that it can meet its burden at trial as to whether the disputed untainted property was involved with money laundering. *See Melrose*, 357 F.3d at 505–06; FED. R. CIV. P. SUPP. R. G(f)(2); *see also United States v. Aguilar*, 782 F.3d 1101, 1108–09 (9th Cir. 2015) (stating that the "reasonable belief" standard is "not . . . onerous" and sets a "low bar"); *United States v. Mondragon*, 313 F.3d 862, 867 (4th Cir. 2002) (interpreting Supplemental Rule E(2) to require the Government to "state[] the circumstances giving rise to the forfeiture claim with sufficient particularity that [a claimant] could have commenced a meaningful investigation of the facts and drafted a responsive pleading").[6]

Claimants also argue the district court erred by not requiring the Government to show probable cause to think there is "a substantial connection" between untainted funds in the UBS accounts and money laundering as required by 18 U.S.C. § 983(c)(3). The district court did not specifically discuss

---

[6] Supplemental Rule G(2) superseded Supplemental Rule E(2) effective Dec. 1, 2006. The Advisory Committee's Note explains that Supplemental Rule G(2)(f) codifies the standard developed by courts in interpreting Supplemental Rule E(2). *See* FED. R. CIV. P. SUPP. R. G advisory committee's note to 2006 amendment.

this requirement.[7]   But as explained above, the Government alleged facts supporting a reasonable belief that it will be able to prove a substantial connection.  "Criminal activity such as money laundering largely depends upon the use of legitimate monies to advance or facilitate the scheme.  It is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue."  *Tencer*, 107 F.3d at 1135 (quoting *United States v. Contents of Account Numbers 208-06070 & 208-06068-1-2*, 847 F. Supp. 329, 334–35 (S.D.N.Y. 1994)).

### 3. "Purpose—not merely effect" of Commingling

Claimants further argue the district court erred by not requiring the Government to show probable cause to think Claimants' commingling had "the purpose—not merely effect" of hiding criminal proceeds, as required by 18 U.S.C. § 1956(a)(1)(B)(i).  *See Regalado Cuellar v. United States*, 553 U.S. 550, 567 (2008).  Claimants, however, ignore that "[e]vidence that the defendant commingled illegal proceeds with legitimate business funds has been held to be sufficient to support the design element."  *See United States v. Willey*, 57 F.3d 1374, 1386 (5th Cir. 1995) (collecting cases).[8]   Converting criminal proceeds "into an ostensibly legitimate form, such as business profits or loans"

---

[7] We nonetheless "may affirm on any grounds supported by the record, even if those grounds were not relied upon by the lower courts." *In re Plunk*, 481 F.3d 302, 305 (5th Cir. 2007).

[8] Although *Willey* predates *Regalado Cuellar*, we have relied on *Willey* in analyzing *Regalado Cuellar*'s "purpose, not merely effect" standard. *See United States v. Valdez*, 726 F.3d 684, 690 (5th Cir. 2013). Claimants argue *Valdez* supports their argument because we concluded there that the requisite purpose did not exist where the government relied on a defendant's transfers of funds from operating accounts to investment accounts, purchases of property, and investments "all done openly, in his name." *See* 726 F.3d at 690. But *Valdez* did not involve allegations that the defendant commingled tainted and untainted funds in order to hide criminal proceeds, which is key to the Government's forfeiture claim here. *See id.* at 689–90.

may show the requisite purpose. *Id.* at 1384 (quoting *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1474 (10th Cir. 1994)). So, too, does "moving money through a large number of accounts . . . in the light of other evidence," even if all the accounts were held in a defendant's own name. *Id.* at 1386.

Here, the Government alleged that Claimants commingled tainted and untainted funds, used commingled funds as collateral, and moved funds through multiple accounts. Based on *Willey*, these facts are sufficient to support a reasonable belief that the Government will be able to prove that Claimants' commingling had "the purpose—not merely effect" of hiding criminal proceeds.

## B. Forfeiture Based on Mail and Wire Fraud

Claimants argue the district court erred in finding probable cause for forfeiture based on the charge for conspiracy to distribute controlled substance analogues. We need not decide that issue, however, because we agree with the district court that probable cause for forfeiture exists based on the charge for conspiracy to commit mail and wire fraud. Claimants argue the Government has alleged only an "incidental" use of the mail and wires, which they contend is not enough. But Claimants' view is plainly at odds with the case law.

The grand jury indicted Claimants on one count of conspiracy to commit mail and wire fraud under 18 U.S.C. §§ 1341, 1343, and 1349. "For a mailing to be part of the execution of a fraudulent scheme, 'the use of the mails need not be an essential element of the scheme.'" *United States v. Strong*, 371 F.3d 225, 228 (5th Cir. 2004) (quoting *Schmuck v. United States*, 498 U.S. 705, 710 (1989)). "It is sufficient for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Id.* (alteration in original); *see also United States v. Traxler*, 764 F.3d 486, 488 (5th Cir. 2014). The same standard applies to use of the wires in a wire fraud case. *See United States v. Barraza*, 655 F.3d

12

No. 17-10624
c/w No. 17-10626

375, 383 (5th Cir. 2011). The question is whether the mailings or use of wires "somehow contributed to the successful continuation of the scheme—and, if so, whether they were so intended." *See id.* at 383; *Strong*, 371 F.3d at 230.

Here, the grand jury's indictment undoubtedly alleges that the defendant Claimants' use of the mail and wires was "incident to an essential part of the scheme" or "a step in [the] plot." *Strong*, 371 F.3d at 228. It alleged that the defendant Claimants caused spice products or ingredients to be sent or delivered by mail, and used telephonic and electronic communications to carry out their scheme, in order to defraud Gas Pipe customers by marketing and distributing misbranded drugs.

Namely, the defendant Claimants allegedly represented that spice products were "incense," "potpourri," or "aromatherapy," and "lab certified" and "100% synthetic cannabinoid free," when in fact the products contained synthetic cannabinoids. Causing spice products or ingredients to be mailed, and using wire and electronic communications to discuss the scheme, allegedly advanced and was intended to advance the alleged fraud. The indictment therefore establishes probable cause to think Claimants committed mail and wire fraud. *See Kaley*, 571 U.S. at 340–41.

The cases Claimants cite do not hold otherwise. In *Kann v. United States*, defendants allegedly caused their corporation to issue checks payable to them, which they cashed at local banks; the banks in turn mailed the checks to the drawee banks for collection. *See* 328 U.S. 88, 94 (1944). The fraudulent scheme was successful once the defendants cashed the checks, rendering "the subsequent banking transactions between the banks . . . merely incidental and collateral to the scheme and not a part of it." *Id.* at 95. Those facts distinguished *Kann* from cases where, as here, "mails are used prior to, and as one step toward, the receipt of the fruits of the fraud." *See id.*

13

No. 17-10624
c/w No. 17-10626

Similarly, in *United States v. Maze*, the defendant allegedly stole his roommate's credit card and used it to pay for motels knowing that the motels would have to mail an invoice to the credit card's issuing bank, which would in turn mail a bill to the card's owner. *See* 414 U.S. 395, 396–97 (1974), *superseded by statute on other grounds as recognized by Loughrin v. United States*, 134 S. Ct. 2384 (2014). The Court said the use of mails was not enough for mail fraud because "the success of his scheme in no way depended on the mailings; they merely determined which of his victims would ultimately bear the loss." *See Schmuck*, 489 U.S. at 714 (discussing *Maze*). By contrast, here, the success of the defendant Claimants' alleged scheme plainly depended on receiving shipments of spice or related ingredients and communicating via the wires about the distribution.

AFFIRMED.