# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2022

Lyle W. Cayce
Clerk

No. 21-20386

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

EDWIN MARTINEZ-BRILIA;
JOSUE ANAHUN MARQUEZ-OSEGUERA;
NESTOR HENRIQUEZ-PARADA,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-467

Before JONES, SOUTHWICK, and HO, *Circuit Judges*.

PER CURIAM:*

Following a two-week trial, a jury convicted Edwin Martinez-Brilia, Josua Marquez-Oseguera, and Nestor Henriquez-Parada of multiple counts of conspiracy and substantive offenses arising out of a "sting" operation in

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-20386

Houston, Texas.  They appeal their convictions on various grounds.  Finding no reversible error, we AFFIRM.

## I. BACKGROUND

In 2017, a joint federal-state task force planned a sting operation against a "rip crew" in Houston, Texas.[1]  The targets were Christian Martinez-Meraz, Martinez-Brilia, Henriquez-Parada, and Marquez-Oseguera.  The task force used Honduran drug-offender Angel Rivera-Valle as a confidential informant and, through him, invited the targets to rob a drug-laden truck.  The targets took the bait.  Police then changed the plan and directed the men to rob a stash house instead.  The task force stocked the house with 30 kilograms of fake cocaine and 60 grams of real methamphetamine, rigged the place with cameras, and set up a command post next door.  The task force executed the sting on October 23, 2017. That morning, the four men, brandishing firearms, arrived at the stash house, broke in, and packed up the drugs before police arrested them.  The entire operation was captured on camera.

In August 2018, a federal grand jury charged the four men with 14 counts of violating federal narcotics, firearm, and immigration laws.  The defendants pled not guilty,[2] and the case proceeded to trial in August 2019.  During jury selection, defense counsel objected to the prosecution's use of two of its seven peremptory strikes against Hispanic females.  The district court heard from both sides and overruled the objection.  At trial, Martinez-Meraz pled guilty to two counts and agreed to testify against his co-

---

[1] A "rip crew" robs drug traffickers or alien smugglers, who are less inclined to report the crime given their line of work.

[2] Prior to trial, Marquez-Oseguera pled guilty to one of the seven counts charged against him.

No. 21-20386

defendants.  The jury found Martinez-Brilia and Henriquez-Parada guilty on eight counts and Marquez-Oseguera guilty on four counts and not guilty on two.  The district court sentenced Martinez-Brilia and Henriquez-Parada both to 204 months' imprisonment without parole and Marquez-Oseguera to 210 months' imprisonment without parole. All three defendants appeal their convictions.

## II. STANDARDS OF REVIEW

Because "a district court makes a finding of fact when it determines whether a prosecutor has purposively discriminated on the basis of race in striking a juror," review of a trial court's denial of a *Batson* challenge is for clear error.  *United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013).

Duly preserved sufficiency of the evidence claims are "reviewed de novo but 'with substantial deference to the jury verdict.'"  *United States v. Anderton*, 901 F.3d 278, 282 (5th Cir. 2018) (quoting *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018)).[3]  The court will apply "the same standard as applied by the district court: could a rational jury find that all elements of the crime were proved beyond a reasonable doubt?"  *United States. v. Moparty*, 11 F.4th 280, 296 (5th Cir. 2021) (quoting *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017)).  "All inferences and credibility determinations are to be resolved in favor of the jury's verdict."  *United States v. Castro*, 15 F.3d 417, 419 (5th Cir. 1994).

## III. DISCUSSION

Defendants raise three arguments on appeal.  *First*, Martinez-Brilia and Marquez-Oseguera contest the district court's denial of their *Batson*

---

[3] Defendants preserved their sufficiency of the evidence arguments by timely moving for judgment of acquittal under Federal Rule of Criminal Procedure 29.

challenge. *Second*, Martinez-Brilia and Henriquez-Parada argue that the evidence was insufficient to support their Hobbs Act convictions. And *third*, Henriquez-Parada raises a sufficiency of the evidence challenge to his conspiracy to possess with intent to distribute a controlled substance conviction.

## A. *Batson*

Martinez-Brilia and Marquez-Oseguera appeal the district court's denial of their *Batson* challenge to two prospective Hispanic female jurors (Nos. 25 and 27) who were struck. Defendants did not timely object before the district court, but even if we consider the challenge on the merits, there is no record evidence to suggest that the district court clearly erred when it found no purposeful discrimination.

"The use of peremptory challenges to exclude veniremen 'solely on account' of race violates the equal protection component of the due process clause of the fifth amendment." *United States v. Webster*, 162 F.3d 308, 349 (5th Cir. 1998); *see also Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986). A defendant making a "*Baston* challenge" to a prosecutor's peremptory strike must do so "before the venire has been dismissed." *United States v. Krout*, 66 F.3d 1420, 1428 (5th Cir. 1995); *see also United States v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996). This is so because a "timely objection and the corresponding opportunity to evaluate the circumstances of the jury selection process are essential to a trial court's reasoned application of the limitations placed on peremptory challenges by the *Batson* holding." *Thomas v. Moore*, 866 F.2d 803, 805 (5th Cir. 1989). Further, the trial court should *sua sponte* reject an untimely *Batson* challenge even if the government fails to object. *Garcia v. Excel Corp.*, 102 F.3d 758, 759 (5th Cir. 1997).

The two defendants' *Batson* challenge was untimely because the veniremembers had left the courtroom before Defendants objected. The district court dismissed the venire panel and the members exited. When defense counsel then sought to discuss the makeup of the jury, the district court clarified for the record that the venire panel members had already left the room. Raising the timeliness issue *sua sponte*, the district court questioned defense counsel about their untimeliness: "How can you do [a Batson challenge] now? . . . You have to do it before the jurors get out." Because the opportunity had effectively passed to replace the veniremen who had been struck, the district court properly denied Defendants' *Batson* challenge. *Cf. Krout*, 66 F.3d at 1428, 1428 n.12 (this court reached *Batson* merits where it was "unclear whether the veniremen had physically left the courtroom" before defense counsel's objection).

Nonetheless, they argue that the district judge "expressly authorized" their challenge by saying "go on. You make your challenge." Of course, a district court's decision to hear the merits of an untimely challenge does not erase the untimeliness of the challenge, and this court can affirm on any grounds supported by the record and argued in the court below.[4] The untimeliness of Defendants' challenge alone warrants affirming its denial.

However, because the district court considered the untimely challenge on its merits, we will too, following the familiar three-step process. *First*, "the challenger must make a prima facie showing of discriminatory jury selection," which is a moot issue in this appeal because "the district court ruled on the ultimate question of discrimination." *United States v. Petras*, 879 F.3d 155, 161 (5th Cir. 2018). *Second*, the prosecutor "must provide a

---

[4] *See United States v. Smith*, 957 F.3d 590, 592 (5th Cir. 2020); *United States v. Real Prop. Located at 1407 N. Collins St., Arlington, Tex.*, 901 F.3d 268, 275 n.7 (5th Cir. 2018); *United States v. Mendez*, 431 F.3d 420, 426 (5th Cir. 2005).

race-neutral explanation for the strikes." *Id.* Here, the prosecutor cited the challenged jurors' employment history as the reason for striking them. This is certainly race-neutral.[5]

Thus, the analysis turns on the third step, which asks whether the defendant has carried his burden of proving that the prosecutor's proffered reason is a pretext for purposeful discrimination. *Petras*, 879 F.3d at 161. Because many "relevant factors cannot be judged from a cold record," the district court's determination "warrant[s] great deference." *United States v. Thompson*, 735 F.3d 291, 296, 299 (5th Cir. 2013).

Defendants make four arguments in an attempt to demonstrate purposeful discrimination. Even when considered together, they do not evince clear error on the part of the district court.

*First*, Defendants contend that the district court gave too much weight to the presence of Hispanics on the jury. To determine whether the government had made a concerted effort to exclude Hispanic persons from the jury, the district court asked for names of non-struck jurors who appeared to be Hispanic. There were three: two female and one male. Although not dispositive, such a jury make-up weighs against purposeful discrimination. *See United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993) ("[T]he fact that [the prosecutor] seated another Hispanic female and that the prosecutor himself is Hispanic shows that this challenge was particular to this female . . . .").

---

[5] *See Moore v. Vannoy*, 968 F.3d 482, 491 (5th Cir. 2020) (*type* of employment can be a proper race-neutral reason); *United States v. De La Rosa*, 911 F.2d 985, 990–91 (5th Cir. 1990) (same); *United States v. Arce*, 997 F.2d 1123, 1126 (5th Cir. 1993) (employment history is a race-neutral reason on its face); *United States v. Pofahl*, 990 F.2d 1456, 1466 (5th Cir. 1993) (struck jurors' employment was one of the prosecutor's race-neutral reasons); *United States v. Romero-Reyna*, 889 F.2d 559, 560–62 (same).

*Second*, Defendants point to the government's failure to ask any follow-up questions during *voir dire* about employment history. But questions about employment history appeared on the juror questionnaire, so the government's silence on the subject during *voir dire* says little, if anything, of pretext. *See Woodward v. Epps*, 580 F.3d 318, 340 (5th Cir. 2009).

*Third*, Martinez-Brilia alone argues that the prosecutor's proffered reason "reek[s] of afterthought" because employment history inquiries are "out of place in relatively short, straightforward trials, like Brilia's." This trial was anything but; it spanned 10 days, heard from 24 witnesses, and included nearly 50 exhibits.

*Fourth*, Martinez-Brilia briefly suggests that striking Juror 25, who had a cousin in the army, should raise eyebrows because individuals with "familial ties to the military" are typically more favorable to the prosecution than to the defense.

Because "the district court had the advantages of observing the voir dire . . . and being able to consider the demeanor of the prosecutor as he made his explanation," and given the presence of three non-struck Hispanic jurors, the district court's factual finding of no purposeful discrimination is not clearly erroneous. *United States v. Turner*, 674 F.3d 420, 436 (5th Cir. 2012).

Defendants' *Batson* challenge was untimely and, in the alternative, meritless.

## B. Hobbs Act Conspiracy

Martinez-Brilia and Henriquez-Parada appeal their convictions for conspiracy to commit Hobbs Act robbery on sufficiency of the evidence grounds. Viewed in the light most favorable to the jury's verdict, the evidence was sufficient to support their convictions.

Hobbs Act prosecutions may be brought against someone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so." 18 U.S.C. § 1951(a). The government must prove "(1) a robbery, act of extortion, or an attempt or conspiracy to rob or extort; and (2) an interference with interstate commerce." *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997). Only the first element is here at issue.

That element requires the jury to "find an agreement between two or more persons to commit [robbery], and an overt act by one of the conspirators to further the conspiracy." *United States v. Box*, 50 F.3d 345, 349 (5th Cir. 1995) (quoting *United States v. Stephens*, 964 F.2d 424, 427 (5th Cir. 1992)). Because no defendant challenges the "overt act" element, we examine only whether the evidence was sufficient to show an agreement to commit robbery.

"A conspiracy agreement may be tacit, and the trier of fact may infer agreement from circumstantial evidence." *United States v. Thomas*, 12 F.3d 1350, 1356 (5th Cir. 1994) (quoting *United States v. Hernandez-Palacios*, 838 F.3d 1346, 1348 (5th Cir. 1988)). "The jury . . . may rely upon the defendant's presence and association, along with other evidence, in finding that a conspiracy existed." *United States v. Olguin*, 643 F.3d 384, 393 (5th Cir. 2011) (quoting *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989)). Hobbs Act robbery is "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force." 18 U.S.C. § 1951(b)(1).

Martinez-Brilia argues that he could not have conspired to commit Hobbs Act robbery because no one was in the stash house, so he could not have taken "property from the person" of another. This argument gets him nowhere because "factual impossibility does not preclude a conviction for

conspiracy or attempt." *United States v. Burke*, 431 F.3d 883, 886 (5th Cir. 2005).

Henriquez-Parada, on the other hand, contends that all Defendants "knew the house to be empty." The evidence does not bear this out. Rivera-Valle testified that he told the Defendants that undocumented aliens and drugs would be present in the house. Martinez-Meraz testified that they brought guns because they thought the house might be occupied. Henriquez-Parada highlights Detective Rivas's testimony that Rivera-Valle told the Defendants on the day of the robbery that the occupants were starting to leave and that they "would no longer be there." But Rivas also testified that Martinez-Meraz, Henriquez-Parada's co-conspirator, expected people to be in the house. In sum, there is ample evidence from which a rational jury could find that Henriquez-Parada thought people would be present in the house.

Additionally, Henriquez-Parada argues that there was no evidence that he conspired to commit Hobbs Act robbery because there were no communications revealing such an agreement. To the contrary, the trial record contains sufficient evidence of an agreement, including incriminating communications. For example, Martinez-Meraz testified that the Defendants initially planned to rob the Mexican drug dealer at a gas station, but the plan shifted to steal the drugs from the stash house, which they expected to be occupied. All three defendants wanted to participate. Indeed, Henriquez-Parada sent an audio message to Martinez-Meraz on the day before the robbery: "We're here, ready. Just call us, and we will hit it." They all met the day of the robbery to run through the plan. In sum, Henriquez-Parada knowingly agreed to participate in Hobbs Act robbery.

## C. Drug Offense Conspiracy

Henriquez-Parada also appeals the sufficiency of evidence supporting his guilt for conspiracy to possess with intent to distribute a controlled

substance. "A conviction for conspiracy to distribute a controlled substance requires proof of (1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003) (citation omitted). "A defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible," that is, unless "it relates to facts that the witness could not possibly have observed." *Id.* at 410 (quoting *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)).

As with his Hobbs Act conviction challenge, Henriquez-Parada asserts that there were no communications to or from him showing an agreement to violate the narcotics laws or that he knew of such an agreement. The trial evidence tells a different story.

Martinez-Meraz testified that he told the Defendants, including Henriquez-Parada, of the plan to rob the truck (and later the stash house) of cocaine and meth, sell the drugs, and keep the proceeds. He testified further that he and all three defendants met on the day of the robbery to discuss the plan. And later that day he showed the Defendants the address of the stash house before they drove there together. Finally, he identified Henriquez-Parada as one of the armed men arrested at the stash house.

Detective Lowrey testified that he observed via hidden-camera feed Henriquez-Parada and the other defendants break into the stash house, locate the sham drugs, and load them onto a sheet before police arrested them. Detective Rivas testified that Henriquez-Parada's and Martinez-Brilia's texts to one another contained a picture of the target truck with the commentary, "That's the truck."

No. 21-20386

This evidence was sufficient for a rational jury to find that the elements of the crime were proved beyond a reasonable doubt. Henriquez-Parada agreed to violate the law by meeting to discuss the plan to rob the truck and then the stash house. He certainly knew of the plan, and he voluntarily participated in the conspiracy, from driving to the stash house, breaking in, searching for the drugs, and then packing them up.

For the foregoing reasons, we AFFIRM the Defendants' convictions.