# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2026

Lyle W. Cayce
Clerk

No. 25-10365

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DEHSHID NOURIAN; CHRISTOPHER RYDBERG,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:17-CR-155-2,
3:17-CR-155-3

———————————————————

Before HAYNES, HIGGINSON, and HO, *Circuit Judges*.

PER CURIAM:[*]

A jury convicted Dehshid Nourian and Christopher Rydberg of their involvement in a healthcare fraud scheme. The scheme involved recruiting doctors to prescribe drugs to patients in return for a portion of the insurance proceeds. The doctors largely targeted federal employees receiving worker's

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

compensation and sought to prescribe these patients compound drugs because the government was known to pay large amounts for this type of drug—up to two to three times more than the amount paid by commercial businesses and far more than it cost pharmacies to manufacture. Nourian managed multiple pharmacies participating in the scheme. Rydberg directed finances for some of the pharmacies, including preparing taxes and managing account transfers.

Following a jury trial, Nourian was convicted of sixteen counts stemming from his involvement in the scheme, including conspiring to commit healthcare fraud, committing healthcare fraud, conspiring to commit money laundering, committing money laundering, and conspiring to defraud the United States. Rydberg was convicted of nine counts, including conspiring to commit healthcare fraud, conspiring to commit money laundering, committing money laundering, and conspiring to defraud the United States. Nourian and Rydberg now appeal their convictions, challenging various aspects of both the trial and sentencing. For the following reasons, we affirm.

Nourian and Rydberg first argue that the jury lacked sufficient evidence to convict them on any count. We review this challenge de novo. *United States v. Scott*, 892 F.3d 791, 796 (5th Cir. 2018). As part of their challenge to their conviction for conspiring to commit healthcare fraud, Nourian and Rydberg argue that the jury lacked sufficient evidence to convict them of this count because the Federal Employees' Compensation Act (FECA) is not a healthcare benefit program within the meaning of 18 U.S.C. §§ 24(b), 1347, and 1349. But we interpret the term "healthcare benefit program" broadly. *United States v. Anderson*, 980 F.3d 423, 428 (5th Cir. 2020). And we have previously included FECA in a list describing federal healthcare programs. *See United States v. Shah*, 95 F.4th 328, 349 (5th Cir. 2024). Furthermore, Nourian and Rydberg weren't just convicted of

defrauding FECA.  They were also convicted of defrauding Blue Cross Blue Shield (BCBS).  Defendants do not contest that BCBS is a federal healthcare benefit program.  And having reviewed the evidence in the light most favorable to the prosecution, we hold that a reasonable jury could have found beyond a reasonable doubt that Nourian and Rydberg conspired to defraud both FECA and BCBS.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

As to the sufficiency of the evidence underpinning Nourian's convictions for substantive healthcare fraud, we have held that "[t]ypically, the same evidence will support both a conspiracy and an aiding and abetting conviction." *United States v. Sanders*, 952 F.3d 263, 278 (5th Cir. 2020) (internal citation omitted).  And here, the government presented more than enough evidence of Nourian's involvement for a reasonable jury to have found that Nourian committed healthcare fraud: Nourian managed multiple pharmacies participating in the scheme, he recruited Nicolas Aguilar to fill fraudulent prescriptions, and Nourian received at least $20 million in profits throughout the time he was involved in the scheme.

As to the money laundering counts, Nourian and Rydberg argue that—because there is insufficient evidence that they knew about the underlying healthcare fraud—their money laundering convictions must likewise fail because they had no knowledge that their financial transactions involved unlawful proceeds.  But the government presented sufficient evidence that Nourian and Rydberg committed the underlying healthcare fraud, including evidence that both Nourian and Rydberg provided pre-filled prescription pads to doctors participating in the scheme.  Furthermore, the government presented extensive evidence that Nourian and Rydberg knew that the millions of dollars the pharmacies received were proceeds of fraud and that these proceeds weren't processed for legitimate business purposes.  Thus, based on the evidence presented at trial, a jury could reasonably determine that Nourian and Rydberg committed money laundering.

Finally, as to Nourian and Rydberg's conviction for conspiring to defraud the United States, they again argue that the government presented insufficient evidence of knowledge. But the government presented detailed evidence that both men were intimately involved in the scheme's fraudulent financial transactions. And having reviewed this evidence in the light most favorable to the prosecution, we hold that a reasonable jury could have "found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Next, Nourian and Rydberg contend that a portion of the government's closing argument was inappropriate and warranted a new trial. The parties disagree about the applicable standard of review. But we need not decide this issue here because—regardless of the standard of review—their challenge fails. The government's closing argument did not affect Nourian and Rydberg's substantial rights. *See United States v. Barnes*, 979 F.3d 283, 299 (5th Cir. 2020). Even if a portion of the government's closing argument was inappropriate, the district court provided a curative instruction to the jury. It also explicitly instructed the jury that it must find that Nourian and Rydberg had knowledge of the crime in order to return a guilty verdict. And "juries are presumed to follow [the court's] instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). So Nourian and Rydberg cannot show that the government's closing argument affected their substantial rights such that a new trial is warranted.

As to sentencing, Nourian and Rydberg both challenge the district court's application of a two-level sentencing enhancement for an offense that involved "10 or more victims." USSG § 2B1.1(b)(2)(A)(i). Specifically, they challenge the district court's reliance on the definition of "victim" provided in Application Note 4(E) of the Guidelines commentary. We "review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v.*

*Bourrage*, 138 F.4th 327, 352–53 (5th Cir. 2025) (cleaned up).  The Guidelines commentary is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Stinson*, 508 U.S. 36, 38 (1993).  Here, the district court correctly relied on Application Note 4(E) in determining that the two-level enhancement applied.

Nourian brings three additional challenges to his sentencing.  First, he argues that the district court erred in considering his lack of remorse at sentencing.  In reviewing this challenge, we consider whether the district court abused its discretion.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  After Nourian allocuted, the district court observed that Nourian showed no remorse.  However, there is no indication that the district court considered Nourian's lack of remorse in weighing the § 3553(a) factors.  Furthermore, the district court varied downward and sentenced Nourian below the guidelines range.  And this court "presume[s] sentences within or below the calculated guidelines range are reasonable."  *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015).  Nourian has not shown that the district court abused its discretion in sentencing him to a below-Guidelines sentence.

Next, Nourian argues that the district court erred in ordering that his entire TD Ameritrade account be forfeited.  "We review the district court's legal conclusions as to the propriety of a forfeiture order *de novo*, the district court's findings of facts under the clearly erroneous standard, and the question of whether those facts constitute legally proper forfeiture *de novo*." *United States v. Dennis*, 41 F.4th 732, 745–46 (5th Cir. 2022) (cleaned up).  "[M]erely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture."  *United States v. Real Prop. Located at 1407 N. Collins St., Arlington, Tex.*, 901 F.3d 268, 274 (5th Cir. 2018) (cleaned up).  But "untainted funds are forfeitable if a defendant commingled them with tainted funds to disguise the nature and

source of his scheme." *Id.* The government presented evidence that most of the funds in the Ameritrade account were the direct proceeds of the fraud. It also presented evidence that, to conceal the illegal source of the funds, Nourian moved the tainted funds through multiple accounts before ultimately commingling the fraud proceeds with other funds in the Ameritrade account. Based on these facts, the district court did not clearly err in determining that Nourian's bank account was used to facilitate money laundering and was thus subject to forfeiture in its entirety.

Finally, Nourian argues that the district court's restitution order is unconstitutional because the question of restitution was not first submitted to a jury. But—as Nourian admits—this challenge is squarely foreclosed by our precedent. *See United States v. Luna Caudillo*, 110 F.4th 808, 811 (5th Cir. 2024).

The judgment of the district court is affirmed.